[No. 4260-0-III.   Division Three.   January 12, 1982.]

PATTRA COLLEEN VALLEY, *Respondent*, v. FRANKLIN
D. SELFRIDGE, *Appellant*.

*Harvey Erickson* and *Erickson & Erickson,* for appellant.

*Irving B. Paul* and *Huppin, Ewing, Anderson & Hergert,* for respondent.

ROE, J.—In 1969, Mrs. Pattra Selfridge, now Mrs. Valley, divorced Franklin Selfridge. He was ordered to pay $200 per month for the support of two minor children. He did not pay it, and in February 1973, she obtained a judgment against him for $6,100 for such delinquency. The judgment also required that "future payments shall apply against the most delinquent amount owed." Mr. Selfridge paid part of the judgment. Mrs. Valley then left the jurisdiction and moved to South Dakota with the children and her present husband. While there she filed an action under the uniform reciprocal enforcement of support act (URESA). The URESA action was brought for enforcement on the South Dakota petition in Spokane County, Washington.

In 1976 the Spokane court entered an agreed order in that action providing that Mr. Selfridge would pay $125 per month. He is current in that URESA order. However, he admits arrearages accruing prior to that URESA order are still outstanding.

Later Mrs. Valley returned to Spokane. She made claim upon Mr. Selfridge for support and he filed a petition in Superior Court to determine the amount of support due. She answered, seeking $13,900, claiming $200 per month since 1969, according to the divorce decree, but allowed

credit to be given for payments made pursuant to the URESA action of $125 per month, but urging such payments should be applied to the most delinquent monthly amount due as provided in the original divorce decree.

Mr. Selfridge argued the URESA order of 1976 reduced the divorce order of $200 per month for the support of the children to $125 per month and that such payments must be applied to the months when actually paid and not to the most delinquent support. He also claimed the 6–year statute of limitation had run on monthly arrearages accruing under the 1969 divorce decree.

The trial judge held the URESA order of support did not modify the original divorce decree and therefore does not prevent Mrs. Valley from seeking all support in arrears at the rate of $200 per month, giving Mr. Selfridge credit for the $125 per month payment made, thus leaving a balance of $75 still due on each monthly payment since the URESA order of 1976. The trial court also held all payments under the URESA order must be applied to the months paid and not to the most delinquent support obligations under the later judgment decree. He also found a 6–year statute of limitation applied to the judgment entered in 1973, and to child support accruing after that date so that Mrs. Valley was only entitled to support arrearages dating from 1974 (6 years previous to this present action) at the rate of $200 per month, less the sum of $125 per month paid from January 1976. This award totaled $7,400 plus $1,000 for attorney's fees. Both parties appeal.

Mr. Selfridge first argues (even though this may be inconsistent to his position that the amount of support was reduced from $200 to $125 per month thereby) that URESA is not available to Mrs. Valley because she left the jurisdiction and he remained a resident of this state, since the act's stated purpose is to pursue wandering fathers who stray from support obligations. That precise issue has not previously been determined in this state, although other jurisdictions have considered it. In *Harmon v. Harmon,* 160 Cal. App. 2d 47, 324 P.2d 901 (1958), the husband argued

that a URESA proceeding may not be maintained where the wife departs from the marital domicile and moves to another jurisdiction. The court disagreed, stating in 160 Cal. App. 2d at 55–56:

The material question herein is whether defendant owes a duty to support his daughter. There is no requirement that as a condition to bringing a proceeding under the Act there be a showing that the obligor has absconded. In *Smith* v. *Smith, supra,* 131 Cal.App.2d 764 [281 P.2d 274], it was said at page 770: "The Acts in question [Uniform Reciprocal Enforcement Acts] are not limited to cases where an obligor flees the jurisdiction of an initiating state." In the present case the evidence was sufficient to support the finding that defendant owes a duty to support his daughter.

*Accord, Commonwealth v. Mexal,* 201 Pa. Super. 457, 193 A.2d 680 (1963). The act does not prohibit the wife from bringing the action in the state to which she went. We find the overriding purpose of the act, to order fathers to support their children, is not dependent on who remains and who leaves. The application of URESA was proper.

■ Mr. Selfridge also contends the divorce decree was amended or modified by the agreed URESA order of March 30, 1976. Yet, the only cases cited by Mr. Selfridge are admittedly contrary to his position. *Davidson v. Davidson,* 66 Wn.2d 780, 786, 405 P.2d 261 (1965), held:

The court in the responding state has power to make an independent order fixing an amount of support different from that called for by a divorce decree rendered in another state.

Mr. Selfridge also cited *Jaramillo v. Jaramillo,* 27 Wn. App. 391, 618 P.2d 528 (1980). In *Jaramillo* there was a California divorce. The respondent husband came to Washington. The wife started a URESA action in California. He urged the court to find a URESA action a modification of the original award rather than an independent action. The court refused to so hold, stating at page 395:

His interpretation would be counter to the result reached in other jurisdictions which have considered the issue.

. . . The statute provides that the remedies under URESA are additional and not substitutional. RCW 26.21.020.

(Citations omitted.) We held in that case that Washington, as the responding state, could not modify the earlier order of support contained in the divorce decree. The pertinent provision at RCW 26.21.190 states:

> No order of support issued by a court of this state when acting as a responding state shall supersede any other order of support but the amounts for a particular period paid pursuant to either order shall be credited against amounts accruing or accrued for the same period under both.

Under RCW 26.20, the criminal nonsupport statute, the court is given power to order specific alternative remedies to enforce support, including an order directing the defendant to pay a certain sum. However, nowhere does it state that this affects a valid preexisting obligation. Such order is rather an agreed amount used for enforcement and invocation of the court's contempt power whereby the prosecuting attorney agrees not to pursue criminal sanctions if the defendant complies with the order. RCW 26.20-.050(2). The purpose of a URESA hearing is to assure a responding state that it can take the individual circumstances of an obligor into account in making its decision. Thus, the responding state may decrease the obligor's obligation as to the URESA action only if the circumstances warrant it. *Jaramillo v. Jaramillo, supra* at 396–97.

Hence, Mrs. Valley may seek all support in arrears at the rate of $200 per month since the March 30, 1976, URESA order did not modify the amount of support required under the 1969 decree.

A final, critical question remains: where there are past due, delinquent, monthly installments for child support for a previous 6–year period, and where a timely proceeding is brought to reduce the amount thereof to a judgment, which

judgment is enforceable for 6 years,[1] does this procedure extend the time for enforcing collection of such installments for the additional years? No Washington case has directly addressed this issue. We answer in the negative.

Each installment of alimony or child support, when unpaid, becomes a separate judgment[2] and bears interest from the due date. Installments which accrued more than 6 years before the proceeding to collect them was commenced are barred by the statute of limitation. *Roberts v. Roberts,* 69 Wn.2d 863, 420 P.2d 864 (1966) (citing other cases); RCW 4.56.210.[3] A proceeding to enforce a judgment for arrearages may be commenced within the 6 years after the installment was due. *Roberts v. Roberts, supra; Herzog v. Herzog,* 23 Wn.2d 382, 161 P.2d 142 (1945).

RCW 4.16.040[4] (applicable in 1978 when this case arose) provided:

> Actions limited to six years. Within six years:
> (1) An action upon a *judgment or decree . . .*

(Italics ours.)

The companion lien statute at RCW 4.56.210[5] provided:

> After the expiration of six years from the date of the entry of any judgment heretofore or hereafter rendered in this state, it shall cease to be a lien or charge against

---

[1]The statute of limitation applicable to an action upon a judgment was amended in 1980. Whereas the former RCW 4.16.040 provided for a 6–year statute of limitation for a judgment, it is now 10 years under RCW 4.16.020.

[2]A judgment for monthly support which is incorporated into a decree of dissolution is final when entered, subject to the right of appeal. RCW 26.09.150.

Accrued installments of child support owed pursuant to a dissolution decree are vested and cannot be retroactively modified. *Koon v. Koon,* 50 Wn.2d 577, 579, 313 P.2d 369 (1957); *Lizotte v. Lizotte,* 15 Wn. App. 622, 628, 551 P.2d 137 (1976); RCW 26.09.170.

[3]RCW 4.56.210, the lien statute applicable to judgments, was amended by Laws of 1979, 1st Ex. Sess., ch. 236, § 1, p. 1957. RCW 4.56.210 provided for a 6–year lien; the current statute provides for a 10–year lien.

[4]See footnote 1.

[5]See footnote 2.

the estate or person of the judgment debtor, and *no suit, action or other proceeding shall ever be had on any judgment rendered in this state by which the lien or duration of such judgment, claim or demand, shall be extended or continued in force for any greater or longer period than six years from the date of the entry of the original judgment,* except as in RCW 4.56.225 provided.

(Italics ours.) Read together, these sections indicate that no action whatsoever may be taken to enforce child support arrearages after 6 years from the date they became due, even though they have been reduced to a judgment within the 6–year period.[6] The cases support this conclusion. *St. Germain v. St. Germain,* 22 Wn.2d 744, 758, 157 P.2d 981 (1945), held:

We are satisfied that both the interlocutory order and the final decree became final judgments, in so far as the installments then required to be made for the support and maintenance of these children are concerned, at the time such installments became due; and that, *six years after they became due, they ceased to have any force or effect and would afford no basis for the issuance of a writ of garnishment or general execution, or any other proceedings to enforce their collection.*

(Italics ours.) *See also Roberts v. Roberts, supra; Schumacher v. Schumacher,* 26 Wn.2d 23, 172 P.2d 841 (1946); *Herzog v. Herzog, supra; Boudwin v. Boudwin,* 159 Wash. 262, 292 P. 1017 (1930).

Although a series of past–due support installments may be reduced to a judgment, it does not follow that this judgment is in lieu of the original judgment that vested on the date the support was due. Rather, the lump–sum judgment is an ancillary proceeding to clarify the amount where there is a question as to the amount of arrearage. This theory is implied in WAC 388–14–305, a provision authorized by RCW 74.08.090. The WAC rule explains the procedure for

---

[6]Since the monthly support becomes a judgment when due and is susceptible to the 6–year judgment–life statute (now 10 years), the life of the monthly judgment is not extended by being formally incorporated into an aggregate judgment reflecting all sums due within the preceding 6 years.

applicants seeking the assistance of DSHS to collect child support obligations pursuant to RCW 74.20A and provides in relevant part:

(2) The applicant shall also include or attach a statement of the amount of accrued arrears and list by date and amount all support payments received during the period of time when the arrears accrued. The office of support enforcement may require this statement to be by affidavit and *where controversy exists the office of support enforcement may require the applicant/custodian to obtain a judgment determining all accrued arrears owed under a continuing order of support before proceeding further with collection efforts.* Applications on which statements are incomplete, unclear or inconsistent will be returned to the applicant and no service will be provided until such time as the application is presented in acceptable form.

(Italics ours.) The remedies provided under RCW 74.20A are in addition to, and not in lieu of, existing law. RCW 74.20A.010. Thus, we interpret this to mean the "judgment determining all accrued arrears" is simply a means to clarify the amount owed. There is no authority to support the claim that that judgment starts a new date from which the statute of limitation would run.

*Hathaway v. Hathaway,* 19 Wn. App. 447, 576 P.2d 919 (1978), appears to answer the question in dicta. There, the parties divorced in 1966. In 1971 a judgment representing child support arrearages was entered in favor of Mrs. Hathaway. In 1976 she moved to have Mr. Hathaway held in contempt for not having paid any part of the 1971 judgment. Although declining to have him held in contempt, the trial court entered an order reciting in part, "'that defendant be required to pay $50.00 per month against such judgment until the entire amount of $3,460.00 is satisfied.'" *Hathaway v. Hathaway, supra* at 448. On appeal Mr. Hathaway assigned error to this purported reinstatement of the 1971 judgment. The court affirmed the trial court's order, stating at 449–50:

In the case at bench, the plaintiff did not seek to

enforce the 1971 judgment by means other than contempt. Accordingly, *the question of whether or not the full amount of the debt created by the 1971 judgment was collectible in August 1976 by means other than contempt is not before us*—nor was it before the trial court. We note, however, that whatever vitality lay in the lien created by the 1971 judgment expired 6 years after entry of the judgment. RCW 4.56.210.

. . .

As a postscript, *however, we are constrained to note, lest there be any misunderstanding which might produce subsequent litigation, neither the order of September 29, 1976, nor the judgment of January 29, 1971, provide any foundation on which the plaintiff may now rely in pursuit of any further attempts to collect (by contempt or otherwise) support arrearages which became due in December 1970 or previously.*

(Italics ours.)

Here, the judgment entered October 24, 1980, was correct as it awarded petitioner $7,400 for support in arrears from September 1974 through August 1980, and denied recovery of the amount accrued from March 1973 through August 1974 because the 6–year statute of limitation had run. Execution must proceed within 6 years after the support payment became due. A lump–sum judgment for support arrearages does *not* start the statute of limitation running anew from that date but rather the original date the support installment became due and thereby a "judgment" is the controlling date for commencing the running of the statute of limitation.

■■ Mrs. Valley also appeals the amount of the judgment contending the 1973 order specifically stated, "Future payments shall apply against the most delinquent amount owed." The trial court's finding of fact No. 12, however, held that all payments under the agreed order of support of March 30, 1976, must be applied to the months paid, and not to accrued but unpaid support obligations under the divorce decree. The appellate court cannot substitute its judgment for that of the trial court's where the finding is amply sustained by the proof and there was substantial

evidence to justify its determination. *Mayo v. Mayo,* 75 Wn.2d 36, 40, 448 P.2d 926 (1968); *Bennett Veneer Factors, Inc. v. Brewer,* 73 Wn.2d 849, 441 P.2d 128 (1968). Payments made pursuant to the agreed URESA order were not bound by the terms and conditions of the 1973 order. URESA, in conjunction with the criminal nonsupport statute, accords the court the power to subject Mr. Selfridge to such terms and conditions as the court may deem proper to assure compliance with its orders. RCW 26.21.040. As to the effect of multiple orders of support on the application of payments, RCW 26.21.190 implies that each order is independent of the other such that the URESA order is not subject to a prior order unless specifically provided. Here, the agreed order of support entered into pursuant to URESA does not specify allocation of payments. However, it does not follow that they should therefore apply to arrearages rather than the current month's obligation. This would be counter to the cases on this point which have consistently disapproved of current payments for child support being first applied to satisfy past due installments unless specifically provided. *Roberts v. Roberts, supra* (citing others). The reasoning was made clear in *Roberts,* at page 869: "This money is not paid to a wife to become her property, but to be expended for the benefit of the children."

Mrs. Valley further contends that even if the statute of limitation does apply to arrearages, it was tolled when Mr. Selfridge absented himself from the state. The trial court's finding of fact No. 14 to which Mrs. Valley assigns error states:

14. Based on the record and testimony Court finds that Respondent's permanent residence continued in Spokane County, Washington regardless of any temporary absences and that the statute of limitations applied herein shall not be tolled by virtue of RCW 4.16.180.

Mr. Selfridge testified he owned a home in Spokane, was a registered voter in Spokane and always received his mail at the Spokane address but that he was transferred from job

to job often without communication for several weeks at a time during the summer and fall seasons. The trial court's finding is amply sustained by the proof and the appellate court will therefore not substitute its judgment. *Mayo v. Mayo, supra.*

Finally, Mr. Selfridge assigns error to the trial court's award of $1,000 for attorney's fees to Mrs. Valley.

■ A wife in a divorce action is not entitled as a matter of right to attorney's fees. The awarding of attorney's fees is a matter within the sound discretion of the trial court, and its determination will not be reversed on appeal unless untenable or manifestly unreasonable. *Mayo v. Mayo, supra; Clark v. Clark,* 72 Wn.2d 487, 433 P.2d 687 (1967). In *Koon v. Koon,* 50 Wn.2d 577, 581–82, 313 P.2d 369 (1957), the court stated: "A wife is not entitled to free litigation. If, however, a wife is without funds, it is an abuse of discretion to deny. Conversely, if the wife has money of her own, it is error to award attorney's fees." (Footnotes omitted.) The record shows evidence of Mrs. Valley's need and Mr. Selfridge's ability to pay. Mrs. Valley testified she and her husband are heavily in debt as a result of their farming operation and are supporting four children. Mr. Selfridge testified he is employed on a seasonable basis. His income tax returns admitted at trial indicate that, for the years 1977 through 1979, he earned between $19,349 and $21,982 each year. There is thus sufficient evidence to support the trial court's award of attorney's fees. Mrs. Valley also asks for attorney's fees on appeal. Since both parties prevailed, no fees will be allowed.

The judgment of the trial court is affirmed in all respects.

MCINTURFF, C.J., and GREEN, J., concur.