[No. 12098-1-I. Division One. May 28, 1985.]

KARL E. LANG, *Appellant,* v. JANET A. LANG, *Respondent.*

*Edwards & Barbieri* and *James E. Lobsenz,* for appellant.

*Rodney G. Pierce,* for respondent.

SCHOLFIELD, A.C.J.—Karl E. Lang appeals from a judgment modifying his obligations of child support. He alleges the court erred in ordering him to contribute to his children's post–high school education until the age of 25. He also appeals the award of a judgment to his ex–wife, Janet A. Lang, in the amount of $1,740.78 and the award of attorney's fees and costs to Mrs. Lang in the amount of $5,000.

Mrs. Lang cross–appeals, alleging error in the trial court's refusal to award judgment for nonpayment of support for the oldest son while he resided with her from the ages of 18 to 21 and for nonpayment of support for the children when they were residing with their father; she further assigns error to the court's limiting of her award of attorney's fees to the amount of $5,000 and to denial of her request for increased child support for each child.

Karl and Janet Lang were divorced on January 6, 1971. Mrs. Lang was awarded custody of the three children and Mr. Lang was ordered to pay child support of $100 per month per child.

In 1973, Mrs. Lang filed a petition for modification. The court rejected her claim for increased child support but ordered Mr. Lang to deliver to her various items of property awarded in the divorce decree, including "any remaining cash monies from the voluntary savings plan as previously set forth in the Decree of Divorce".

On February 22, 1980, Mrs. Lang filed a second petition for modification, again seeking an increase in the amount of child support. Trial commenced July 7, 1982; by then, only the oldest son, Carl, was living with Mrs. Lang. Charles was living on his own, and Peter was living with his father. At that time, Carl was 21 years old, Charles was 20, and Peter was 17. The trial court entered a judgment on modification,

directing Mr. Lang to pay $100 per month into an educational fund for each child engaging in a full–time course of study at the post–high school educational level until that child reached the age of 25. As a supplement to the educational fund, both Mr. and Mrs. Lang were directed to pay additional reasonable and necessary educational expenses of each child pursuing a full–time post–high school education.

The court also ordered Mr. Lang to pay $1,740.78, representing a balance due Mrs. Lang for interest on her one-half share of the Boeing voluntary savings plan. This asset had been previously awarded in the 1971 decree, but had never been paid. Prior to trial, Mr. Lang made a substantial payment to Mrs. Lang, and the $1,740.78 represented the balance due on statutory interest from the date of the divorce decree.

In 1981, Mr. Lang's income from Boeing was $56,703; that year, Mrs. Lang earned approximately $24,000. Mr. Lang testified that his living expenses in November 1981 were $2,176.82; Mrs. Lang's assets consisted primarily of a 1977 automobile and less than $500 in checking and savings accounts. Mr. Lang had an investment account of $52,295 and also owned a house, four cars, a moorage at a yacht club, and two building lots.

## AWARD OF CHILD SUPPORT BEYOND THE AGE OF MAJORITY

Mr. Lang contends the court had no authority to award child support beyond age 21[1] because the law applying to 1971 divorces did not permit it. RCW 26.08.110, which was the law before the 1973 dissolution of marriage act, provided that support could be ordered only for *minor* children. *Sutherland v. Sutherland*, 77 Wn.2d 6, 459 P.2d 397 (1969). The 1973 dissolution of marriage act (RCW 26.09) empowered the court to order support to continue beyond the age of majority. *Childers v. Childers*, 89 Wn.2d 592, 575

---

[1]This was the age of majority provided at the time of the divorce. Former RCW 26.28.010.

P.2d 201 (1978).

■■ RCW 26.09.900–.901 provide that cases pending where no final decree has been entered as of February 11, 1974, may, for good cause shown, be converted to dissolution proceedings under RCW 26.09. Beyond this provision, nothing in the act suggests a legislative intent to make it retroactive. Also, it is the rule in this state that

> a legislative enactment is presumed to apply prospectively only, and will not be held to apply retrospectively unless such legislative intent is clearly expressed or to be implied.

*Baker v. Baker,* 80 Wn.2d 736, 741, 498 P.2d 315 (1972). The 1973 dissolution of marriage act should not be given retroactive effect.

Mrs. Lang argues, however, that *In re Marriage of Gimlett,* 95 Wn.2d 699, 629 P.2d 450 (1981) is authority for award of post–majority child support in a modification proceeding. The language from *Gimlett* relied upon is found at page 704:

> In compelling situations where post–majority support was not originally granted, courts have the power to modify the decree upon a showing of a substantial change of conditions. RCW 26.09.170; . . .

■■ The quoted language is not dispositive for two reasons. First, *Gimlett* involved a 1974 decree. Therefore, the 1973 dissolution act applied. Second, the quoted language is dictum, *i.e.,* an observation not essential to a determination of any issue before the court. *State ex rel. Lemon v. Langlie,* 45 Wn.2d 82, 89, 273 P.2d 464 (1954). The issues in *Gimlett* involved interpretation of child support provisions in an original dissolution decree and the proper meaning of the word "emancipation" as used in the decree. There was no petition for modification involved, and the case was decided on the issue of the proper interpretation of "emancipation."

It follows that the trial court had no authority to impose upon Mr. Lang the obligation to pay child support beyond the age of majority. That portion of the trial court's judg-

ment must be stricken.

## JUDGMENT FOR $1,740.78

The trial court, in conclusion of law 3, awarded judgment to Mrs. Lang for $5,650.23, less amounts previously paid. It is undisputed that shortly before trial, Mr. Lang paid Mrs. Lang $3,909.45, representing her interest in the Boeing voluntary savings plan plus accrued interest according to Mr. Lang's calculations. The trial court awarded interest at the statutory rate for the entire time the money remained unpaid. This left a balance due Mrs. Lang of $1,740.78. Mr. Lang assigns as error the award of judgment for this amount, arguing that the original decree did not order it paid over to Mrs. Lang immediately. The order entered October 17, 1973, directed Mr. Lang to deliver to Mrs. Lang, among other things, "any remaining cash monies from the voluntary savings plan as previously set forth in the Decree of Divorce entered in this cause." The trial court did not accept Mr. Lang's explanation that Mrs. Lang agreed to allow the funds to remain in the voluntary savings account. Nor did the trial court accept Mr. Lang's argument that he should not be required to pay interest because he did not use the funds himself, but simply left them in the account. These arguments were resolved against Mr. Lang in the order of October 17, 1973. The award of statutory interest on the sums which were awarded Mrs. Lang in the original decree and remained unpaid until shortly before trial of this modification proceeding was clearly within the court's discretion. *Cleaver v. Cleaver,* 10 Wn. App. 14, 16, 516 P.2d 508 (1973).

## FAILURE TO PAY CHILD SUPPORT

Mrs. Lang cross–appeals the trial court's failure to award to her a judgment for unpaid child support for the oldest son, Carl, from August 1979 through December 3, 1981, when Carl became 21 years of age—a period of 28 months. During this 28–month period, Carl lived with his mother, and Mr. Lang was paying her no child support. The age of majority at the time of this January 1971 decree

was 21 years. The statutory reduction to 18 years, which became effective later in the year 1971, was not retroactive. *Baker v. Baker, supra.* Mr. Lang argues it would nevertheless be inequitable to require him to pay the support for Carl because, over the years, the three children spent more time living with him than with Mrs. Lang. This argument overlooks the requirement that Mr. Lang pay $100 per month per child and that unpaid installments for child support become judgments. The argument would have more validity if the court imposed a duty to pay child support on Mrs. Lang equal to the duty imposed on Mr. Lang. However, Mrs. Lang had no duty to pay child support. "Under our repeated holdings, each installment of alimony or child support, when unpaid, becomes a separate judgment and bears interest from the due date." *Roberts v. Roberts,* 69 Wn.2d 863, 866, 420 P.2d 864 (1966). *See also Valley v. Selfridge,* 30 Wn. App. 908, 913, 639 P.2d 225 (1982).

The trial court erred in failing to enter judgment against Mr. Lang for child support due and unpaid for 28 months at $100 per month plus statutory interest.

### Child Support Claimed for Periods Children Lived With Mr. Lang

It is undisputed Mr. Lang did not pay child support to Mrs. Lang for a child during periods of time when the child lived with him. Mrs. Lang contends each unpaid installment became a judgment against Mr. Lang, whether or not the child was living with Mr. Lang. The trial court rejected this claim by Mrs. Lang, relying on equitable principles. *Schafer v. Schafer,* 95 Wn.2d 78, 621 P.2d 721 (1980) approves the allowance of credit on an obligation for overdue child support under circumstances of an equitable nature where the allowance of credit will not work an injustice to the one to whom the payments are due. The court approved generally a list of suggested factors a trial court can consider in making such a determination.[2]

---

[2]"The factors suggested are: (1) whether the noncustodial parent (a) intended the expenditures for care to be in satisfaction of child support, (b) exerted undue

The original decree in this case provided that Mr. Lang would be relieved of his obligation to pay child support (at the rate of $3.33 per day) for any child visiting with him during summer vacation. The parties, in effect, extended this arrangement to all of the periods of time that a child lived with Mr. Lang. Mrs. Lang testified that the judge who entered the original divorce decree said that, at age 16, the boys could choose the parent they wished to live with. While this provision was not set forth in the decree, the parents both appear to have accepted it as part of the original decree. It appears that as each boy reached age 16, he moved in with his father and was supported by his father. Exhibit 2 reflects that in February 1977, Carl moved in with Mr. Lang and lived with him until August 1979, when he moved back to his mother's apartment (approximately 2½ years). Charles moved to his father's house in May 1978 and stayed until March 1982, when he moved into his own residence (a period of 3 years 10 months). Peter commenced living with his father in August 1980 and was still living with his father at the time this modification proceeding was tried (1 year 11 months).

The record in this case fairly reflects that during the time the boys lived with Mr. Lang, he provided their basic support. Mrs. Lang's contributions were only incidental. The record also fairly reflects that at no time did Mrs. Lang raise a legal objection to the arrangement through the years since the divorce whereby child support was paid to Mrs. Lang only when she had one or more of the boys living with

influence over the child to obtain or retain custody, (c) continued to retain custody as a form of retribution; (2) whether the custodial parent (a) was willing and able to provide necessary care for the child, (b) expressly or impliedly consented to the noncustodial parent's continued custody of the child, (c) was relieved of any or all of the reasonable expenses of child support while the child was in the custody of the noncustodial parent; (3) the length of time the child was in the custody of the noncustodial parent; and (4) whether a compelling reason exists requiring the noncustodial parent not only to pay for the child's care while in that parent's custody, but also to comply with the support order to make child support payments to the custodial parent." *Schafer v. Schafer*, 95 Wn.2d 78, 82, 621 P.2d 721 (1980).

her.

We agree with the trial court that it would be inequitable to now require child support payments totaling over $12,000 be paid to Mrs. Lang for periods of time when the children were living with Mr. Lang and being supported by him. This result is not unjust to Mrs. Lang and is consistent with a fair consideration of the factors recited in *Schafer,* at page 82. Discretion is not abused when the result is reasonable and is based on tenable grounds. *State ex rel. Carroll v. Junker,* 79 Wn.2d 12, 482 P.2d 775 (1971); *Cleaver v. Cleaver, supra.*

### INCREASE IN CHILD SUPPORT

The trial court found a change of circumstances justifying an increase from $100 to $175 per month child support for Peter in the event he moved back into his mother's home.

Mrs. Lang asserts error in not increasing child support for Peter and Carl as of the date of filing her petition for modification, February 22, 1980. At that time, both boys were living with Mrs. Lang. Peter moved out in August 1980, and we have ordered payment of back child support for Carl. The trial court's finding of a change in circumstances justifying increased support for Peter was implicitly a finding as of the time of trial because the increase was effective only as to future payments. There was, thus, no finding of a change of circumstances as of the time of the petition. The absence of a finding in favor of the party having the burden of proof on a material issue amounts to a finding adverse to that party. *Alexander Myers & Co. v. Hopke,* 88 Wn.2d 449, 462, 565 P.2d 80 (1977). We find no abuse of discretion.

### ATTORNEY'S FEES

Mrs. Lang sought an award of attorney's fees in the trial court in the amount of $10,791.60. The trial judge awarded her $5,000. Both parties assign error. Mr. Lang argues there was no adequate showing Mrs. Lang cannot pay her own attorney's fees, and Mrs. Lang argues she was entitled to

the full amount because there was no showing the amount was unreasonable or unearned.

RCW 26.09.140 provides:

> The court from time to time after considering the financial resources of both parties may order a party to pay a reasonable amount for the cost to the other party of maintaining or defending any proceeding under this chapter and for reasonable attorney's fees or other professional fees in connection therewith, including sums for legal services rendered and costs incurred prior to the commencement of the proceeding or enforcement or modification proceedings after entry of judgment.
>
> Upon any appeal, the appellate court may, in its discretion, order a party to pay for the cost to the other party of maintaining the appeal and attorney's fees in addition to statutory costs.
>
> The court may order that the attorney's fees be paid directly to the attorney who may enforce the order in his name.

 In this case, the trial court entered finding of fact 13 providing:

> The Defendant does not have the ability to pay attorney's fees and the Plaintiff has the financial resources and ability to pay the Defendant's attorney's fees and the Plaintiff should be required to pay the Defendant's reasonable attorney's fees and costs in the amount of $5,000.00 within 6 months plus interest.

An award of attorney's fees rests with the sound discretion of the trial court, which must balance the needs of the spouse seeking the fees with the ability of the other spouse to pay. *Kruger v. Kruger*, 37 Wn. App. 329, 333, 679 P.2d 961 (1984). The fact that counsel has billed a certain fee on a case does not automatically make that amount a reasonable fee to be paid by the other party. In exercising its discretion to fix attorney's fees, a trial court can take into consideration any relevant factor in the evidence, including, but not limited to, the nature, complexity and length of the proceeding. We are satisfied the trial court did not abuse its discretion in the award of attorney's fees made to Mrs. Lang.

Mrs. Lang seeks award of additional attorney's fees on appeal. Because both parties receive substantial relief on appeal, we will not award attorney's fees; Mrs. Lang's request is denied.

That portion of the trial court's judgment granting post–majority support for educational purposes is vacated. Mrs. Lang is awarded judgment against Mr. Lang for $2,800, representing child support for 28 months at the rate of $100 per month plus statutory interest thereon. In all other respects, the trial court's judgment is affirmed.

SWANSON, J., concurs.

RINGOLD, J. (dissenting)—I disagree with that portion of the majority's opinion holding that the trial court erred in granting post–majority child support for educational purposes. Under the 1973 dissolution of marriage act (1973 Act), courts have the power to modify a decree to grant post–majority child support upon a showing of substantial change of conditions. *In re Marriage of Studebaker,* 36 Wn. App. 815, 677 P.2d 789 (1984); *In re Marriage of Gimlett,* 95 Wn.2d 699, 704, 629 P.2d 450 (1981). The majority errs in refusing to apply the 1973 Act to the case sub judice.

The majority considers whether it is proper to apply the act retroactively to the pre–1973 divorce decree, assuming that a modification is not a new proceeding to be governed by the laws at the time of the modification. This assumption is not warranted. The Supreme Court has decided that for some purposes a modification is a new proceeding. *State ex rel. Mauerman v. Superior Court,* 44 Wn.2d 828, 271 P.2d 435 (1954); *Lambert v. Lambert,* 66 Wn.2d 503, 403 P.2d 664 (1965).

Policy, including the needs of the child, favors considering a modification a new proceeding, governed by current law. Child support is to be determined by all circumstances which have a bearing on the welfare of the children and the economic situation of the parents. *Puckett v. Puckett,* 76 Wn.2d 703, 705, 458 P.2d 556 (1969). The paramount con-

cern of the courts in proceedings to modify support is the welfare of the child. *Johns v. Johns,* 64 Wn.2d 696, 702, 393 P.2d 948 (1964). The law should be liberally construed to afford children the greatest possible remedy. No justification comes to mind which warrants that the needs of children be treated differently based solely on the date when their parents' marriages were dissolved.

RCW 26.09.170, adopted by Laws of 1973, 1st Ex. Sess., ch. 157, § 17, requires a showing of substantial change in circumstances before a support obligation may be modified. This was also the law in Washington prior to 1973. *Lambert v. Lambert, supra* at 508. I would hold that once a party has demonstrated the requisite change of circumstances, the current law be applied to a modification hearing.[3]

This approach has been taken elsewhere. In Minnesota, which, like Washington, has adopted the Uniform Marriage and Divorce Act, the Minnesota Court of Appeals considered whether to apply 1983 statutory changes in modification guidelines to a pre–1983 divorce decree. The court held "[t]here is . . . no reason why future modifications of support, assuming they are prompted by the requisite change of circumstances, should not be governed by the law in effect at the time of the modification motion." *Hadrava v. Hadrava,* 357 N.W.2d 376, 379 (Minn. Ct. App. 1984).

Even if a modification proceeding is nothing more than an extension of the original decree, the majority's conclusion that the 1973 Act is not applicable is incorrect. "Where . . . a statute is remedial and its remedial purpose is fur-

---

[3]The change of circumstances must be something other than a change in the law itself. *See Cunningham v. Cunningham,* 12 Wn. App. 778, 532 P.2d 652, *review denied,* 85 Wn.2d 1010 (1975). In *Cunningham,* the court held that a modification proceeding was merely an extension of the original divorce action. Consequently, a subsequent change in the age of majority from 21 years to 18 years could not be applied to the modification proceeding. The cases relied upon in *Cunningham* do not support the contention that a modification hearing is only an extension of a divorce decree; instead, they concern whether a change in the age of majority was retroactive to an original divorce decree. I agree with the result in *Cunningham* because there was no showing of a change in circumstances other than a change in the law, but the holding is overly broad.

thered by retroactive application, the presumption favoring prospective application is reversed." *Haddenham v. State,* 87 Wn.2d 145, 148, 550 P.2d 9 (1976). A statute is remedial if it relates to remedies and does not affect substantive or vested rights. *Miebach v. Colasurdo,* 102 Wn.2d 170, 180, 685 P.2d 1074 (1984). The 1973 Act extends the possibility of child support past the age of majority, thus expanding a remedy available in a dissolution proceeding. This part of the act should be applied retroactively because it does not affect vested rights. *See Miebach.*

There is no vested right in any general rule of law or policy of legislation that it remain unchanged for one's own benefit. *Johnson v. Continental West, Inc.,* 99 Wn.2d 555, 563, 663 P.2d 482 (1983). "[T]he legislature is without power to set aside, annul, or change the liability upon a judgment affecting solely the rights of private parties by the enactment of a general law." *Baker v. Baker,* 80 Wn.2d 736, 741, 498 P.2d 315 (1972). Child support payments, however, are not vested judgments until the installments become due. *Schafer v. Schafer,* 95 Wn.2d 78, 80, 621 P.2d 721 (1980). Until they are vested judgments, they are subject to modification by the trial court. *See Schafer;* RCW 26.09.170. Application of the 1973 Act would not, therefore, improperly affect liability on a judgment or infringe vested rights.