IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| In the Matter of the Marriage of | ) | No. 79624-1-I |
| | ) | |
| ARZU KARAALI, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| ADRIAN ANDRISAN, | ) | UNPUBLISHED OPINION |
| | ) | |
| Appellant. | ) | |
| | ) | |

VERELLEN, J. — Arzu Karaali and Adrian Andrisan were married for six years. Andrisan raises several challenges to the court's property division and maintenance determination following a three-day dissolution trial. Trial courts have broad discretion in both areas, and Andrisan fails to establish an abuse of discretion.

Therefore, we affirm.

## FACTS

Karaali and Andrisan married in 2011. They separated in July 2017. Trial occurred in December 2018. The only issues at trial were the division of property and maintenance.

Prior to the marriage, "sometime[ ] in 2005, 2006," Karaali open La Luna Rhythmic Gymnastics Academy.[1]  Karaali took out multiple loans to cover rent and renovations to the gym.  Also prior to the marriage, in 2006, Karaali purchased a condominium in Sammamish.  She paid the down payment and continued to pay the mortgage through trial.

A "couple months after" Karaali and Andrisan married in 2011, Andrisan began helping around the gym.[2]  Andrisan performed maintenance work and eventually helped with bookkeeping and administrative tasks.  In 2015, Karaali established Cerca de La Luna.  Cerca was affiliated with the Amateur Athletics Union (AAU) and thereby benefited from the AAU's 501(c)(3) tax status for the purpose of collecting donations.

In December 2016 or January 2017, Karaali and Andrisan purchased a house in Woodinville.  They paid the down payment with "some money from the business."[3]  Both Karaali and Andrisan testified that Andrisan did work on the house.[4]  Karaali testified Andrisan purchased the materials on her credit card. Andrisan testified that he purchased the materials on his credit card.

Between May 2017 and November 2017, Karaali traveled to Turkey and later, Hawaii.  While Karaali was gone, Andrisan fired the head coach, canceled one of La Luna's after-school programs, and fought with several parents.  At trial,

---

[1] Report of Proceedings (RP) (Dec. 12, 2018) at 91.

[2] Id. at 103.

[3] RP (Dec. 13, 2018) at 182.

[4] Id. at 184.

Karaali presented evidence that Andrisan took money from the business. Andrisan acknowledged he took around $95,000 from the business. He testified that he returned $36,000 and used $39,000 to pay the mortgages on the Woodinville house and Sammamish condominium. He also testified he used $36,000 on materials to upgrade the house and kept $20,000 for himself.

In November 2017, Karaali returned to Seattle. Around that time, Karaali rehired the head coach and pulled $30,000 from the business. She testified she "needed to control the business," and she used the money to pay the head coach, rent, and her personal expenses.[5]

On January 31, 2018, after Karaali and Andrisan separated, the court entered temporary orders. Between February 2018 and September 2018, the court ordered Karaali to pay $3,500 per month in spousal support. In September 2018, the court lowered the monthly amount to $1,000. At trial, Karaali acknowledged she had only paid $1,000 toward her support obligation. She acknowledged she owed around $27,000 in past support.

Throughout trial, Andrisan failed to provide a suggested property division for the businesses. After repeated inquiries from the court about what Andrisan wanted from the businesses, Andrisan finally asserted that he wanted a $60,000 severance package.

Andrisan testified he drove for Uber after the separation but was unable to continue driving due to poor eyesight. Andrisan had a law degree from Romania

---

[5] RP (Dec. 12, 2018) at 121.

and had previously worked as an insurance agent in Romania. He testified he wanted to continue working in insurance but didn't "have a clue about it."[6]

At the end of trial, the court concluded La Luna and Cerca were Karaali's separate property and awarded them to her. The court also determined the Sammamish condominium was Karaali's separate property. The court awarded the condominium and allocated the associated debt to Karaali. As to the Woodinville house, the court characterized it as community property and ordered Karaali and Andrisan to divide the equity. As to spousal support, the court did not award any post-dissolution maintenance. The court denied Andrisan's motion for reconsideration.

Andrisan appeals.

ANALYSIS

I. Gymnastics Businesses

Andrisan contends the trial court improperly characterized Cerca as Karaali's separate property.

"A court's classification of property as either separate or community is a question of law subject to de novo review."[7] "Assets acquired during a marriage are presumed to be community property.[8] But "[t]his presumption may be rebutted by showing the assets were acquired as separate property."[9] Additionally, as a

---

[6] RP (Dec. 17, 2018) at 389.

[7] In re Marriage of Griswold, 112 Wn. App. 333, 339, 48 P.3d 1018 (2002).

[8] Id.

[9] Id.

general rule, trial courts have discretion to divide property during a dissolution.[10] This discretion is limited by the requirement that any division must be "'just and equitable considering all relevant factors.'"[11]

Karaali and Andrisan married in 2011. Cerca was formed in 2015. At the end of the trial, the court determined Cerca was Karaali's separate property. However, because Cerca was formed during the marriage, Cerca is presumptively community property. Karaali fails to provide any compelling argument to rebut this presumption.

But even if the trial court improperly characterized Cerca, "mischaracterization of property is not grounds for setting aside a trial court's allocation of liabilities and assets, so long as the distribution is fair and equitable."[12] "Where there is mischaracterization, the trial court will be affirmed unless the reasoning of the court indicates (1) that the property division was significantly influenced by characterization and (2) that it is not clear that the court would have divided the property in the same way in the absence of the mischaracterization."[13]

Here, there was mixed testimony about Cerca. Karaali testified Cerca was merely a 501(c)(3) affiliate of the AAU. She testified Cerca was limited to

---

[10] In re Marriage of Muhammad, 153 Wn.2d 795, 803, 108 P.3d 779 (2005) (citing RCW 26.09.080).

[11] Id. (quoting RCW 26.09.080).

[12] In re Marriage of Olivares, 69 Wn. App. 324, 330, 848 P.2d 1281 (1993).

[13] Id.

collecting donations for the benefit of the gymnasts. She testified Cerca was not allowed to accept tuition payments. While there was some evidence at trial concerning significant amounts of money in Cerca's bank account at various times, the only evidence of Cerca's value at the time of separation was Karaali's testimony that it was worth around $500, the amount in Cerca's bank account at that time.

Andrisan fails to establish that any error in Cerca's characterization impacted the court's decision to award Cerca to Karaali. Andrisan does not establish that the award of Cerca, given its de minimus value, was not part of a fair and equitable property distribution.

Andrisan argues La Luna and Cerca were commingled and he had a right to compensation for the increase in value to La Luna during the marriage. Because La Luna was Karaali's separate property, Andrisan had the burden of proving that increases in value were community property.[14]

Andrisan contends La Luna was "grossly undervalued" at $25,000.[15] [16] Andrisan points to La Luna's tax returns, which showed sales between $190,000

---

[14] "Separate property will remain separate property through changes and transitions, if the separate property remains traceable and identifiable; however, if the property becomes so commingled that it is impossible to distinguish or apportion it, then the entire amount becomes community property." In re Marriage of Chumbley, 150 Wn.2d 1, 5-6, 74 P.3d 129 (2003).

[15] Appellant's Br. at 23.

[16] Karaali testified, at the time of separation, La Luna was worth "maybe $25,000." RP (Dec. 13, 2018) at 308. The court did not enter findings about the value of either business, but the court appeared to accept Karaali's testimony. And the parties do not dispute that the court relied on the $25,000 value.

and $300,000 per year for 2012, 2013, 2015, and 2016 and other gross revenue figures. But he presented no expert testimony as to a valuation based on the income stream, and the gross revenue figures do not compel a finding that the value exceeded $25,000. The court determined "[t]he business did increase in value because of the labor of both parties," but the court did not "give one party the credit over another."[17] The court determined Andrisan was "adequately compensated out of the business for all of his work."[18]

"The person who alleges that a right of reimbursement exists has the burden of proving both the right of reimbursement and the amount of it. The quantum of evidence is clear and convincing evidence."[19] And the absence of findings of fact are deemed adverse to the party with the burden of proof.[20] There are no findings supporting commingling or other right of reimbursement.

On the existing record, findings, and briefing, Andrisan does not establish there was commingling of Cerca and La Luna. Karaali testified La Luna accepted tuition payments, which in turn covered rent, employee salaries, and other business expenses, whereas Cerca accepted only donations, which in turn

---

[17] RP (Dec. 17, 2018) at 462.

[18] Id.

[19] 19 SCOTT B. HORENSTEIN, WASHINGTON PRACTICE: FAMILY AND COMMUNITY PROPERTY LAW § 11.37, at 272 (2nd ed. 2015).

[20] The absence of a finding in favor of the party having the burden of proof on a material issue amounts to a finding adverse to that party. Alexander Myers & Co. v. Hopke, 88 Wn.2d 449, 462, 565 P.2d 80 (1977); Spencer v. Badgley Mullins Turner, PLLC, 6 Wn. App. 2d 762, 801, 432 P.3d 821 (2018); Lang v. Lang, 40 Wn. App. 758, 766, 700 P.2d 375 (1985).

covered the gymnasts' competition fees. Andrisan does not establish by clear and convincing evidence that the two businesses were commingled.

After repeated inquiries from the court, Andrisan finally indicated he wanted a $60,000 severance package for his contribution to the business. Although there was testimony concerning Andrisan's contributions to La Luna, including maintenance and bookkeeping, as identified by the court, Andrisan was paid a salary for his work at La Luna. He does not provide any citation to authority to support the further award of a severance package.

Andrisan testified that he doubled the business by doubling the number of gymnasts while Karaali was in Turkey and Hawaii. He was unable to produce documentation to support this testimony. Andrisan does not provide any documentation to support a right of reimbursement for any increase in value to the business.

Finally, Andrisan contends the court's distribution did not account for money Karaali took from the business.

During trial, Andrisan accused Karaali of taking money out of the business. Karaali acknowledged that after returning from Turkey and Hawaii, she took $30,000 out of the business to gain control. Karaali also testified that she put most of the money back into the business. Karaali testified that she used the money to pay rent, pay the head coach, and a "little bit for [her]self."[21]

---

[21] RP (Dec. 12, 2018) at 121.

Also during trial, Karaali accused Andrisan of taking money from the business while she was gone. The court admitted evidence of checks Andrisan wrote to himself during that time period. Andrisan acknowledged he took around $95,000. He testified that he returned $36,000 to the business and used $39,000 to make mortgage payments on the Woodinville house and Sammamish condo. He also testified he used $36,000 on materials to upgrade the house and kept $20,000 for himself.

The court's findings and conclusions do not address the money Karaali took from the business. As to the money Andrisan took from the business, the court determined "[t]he $20,000 he kept . . . is fair to pay him for his labor on that house."[22] The court did not require Andrisan to otherwise reimburse the business.

Andrisan did not seek or obtain findings addressing the money Karaali took from the business. And he does not establish the property distribution was otherwise unfair or inequitable considering both parties removed money from the business for personal expenses.

## II. Woodinville House

Andrisan argues the court failed to assign Karaali a portion of the community debt accrued by Andrisan to renovate the Woodinville house.

Both Andrisan and Karaali testified that Andrisan performed work on the Woodinville house. Andrisan testified he paid $36,000 for materials to renovate the house. Andrisan testified he charged the materials to his credit card. Andrisan

---

[22] RP (Dec. 17, 2018) at 464.

failed to meaningfully document his expenditures with receipts. As a result, the trial court was not compelled to accept Andrisan's argument.

III. Sammamish Condo

Andrisan contends the court failed to award him an equitable lien for work he performed on the Sammamish condo. He also argues the court failed to award him a community property interest for mortgage payments on the condo.

The court determined the Sammamish condo was Karaali's separate property. The court "agree[d] with the argument that the community property reimbursement is offset by the benefit of [Andrisan] living there during the duration of their marriage" and found "their community property paid for the mortgage, and he received the benefit of that by living there."[23]

As the party asserting a right of reimbursement, Andrisan has the "burden of proving both the right of reimbursement and the amount of it."[24] Andrisan did not obtain findings supporting his legal theory of reimbursement, and he does not cite legal authority precluding the offset identified by the trial court.

During closing argument, Andrisan asked the court to award him one-half of the condo's equity. But he did not establish by clear and convincing evidence that he had a right of reimbursement. Andrisan did not provide documentation to support his implicit assertion that he contributed community resources to the condo which were unaccounted for in the court's findings and conclusions.

---

[23] RP (Dec.17, 2018) at 462-63.

[24] 19 HORENSTEIN, supra, § 11.37 at 272.

Andrisan challenges the overall fairness of the award of property because, as he characterizes the award, the court awarded two-thirds to Karaali and one-third to him. However, "[a] trial court is not required to place the parties in precisely equal financial positions at the moment of dissolution."[25] Even though the property award was not equal, Andrisan does not establish the trial court abused its discretion in its property division.

IV.  Spousal Support

Andrisan contends the court failed to award him spousal support in the final decree.

The trial court has "broad discretion" when awarding maintenance.[26] "'The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just.'"[27] RCW 26.09.090(1) provides the following nonexclusive list of factors:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
>
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;

---

[25] In re Marriage of Wright, 179 Wn. App. 257, 262, 319 P.3d 45 (2013).

[26] Matter of Marriage of Anthony, 9 Wn. App. 2d 555, 563, 46 P.3d 635 (2019).

[27] Id. at 564 (quoting In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990)).

(c) The standard of living established during the marriage or domestic partnership;

(d) The duration of the marriage or domestic partnership;

(e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and

(f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

"Maintenance not based on a fair consideration of the statutory factors constitutes an abuse of discretion."[28]

Here, the trial court did not award continuing spousal support. Andrisan focused on his limited earning ability. The court determined there was no reason Andrisan could not continue driving for Uber "or whatever he wants to do."[29] The court addressed the factors from RCW 26.08.090. Andrisan does not argue the court failed to consider the factors; Andrisan focuses merely on his financial need and Karaali's ability to pay. But he does not address the court's finding that he was able to find work.

Andrisan does not establish the court abused its discretion.

V. Temporary Spousal Support

Andrisan argues the court improperly ordered Karaali to pay past due spousal support from community funds.

---

[28] Id.

[29] RP (Dec. 17, 2018) at 466.

The court characterized the Woodinville house as community property and determined there was "about $130,000 in equity." As to division between the parties, the court ruled:

> I am directing that the house be either sold or that somehow he's going to have to come up with a little bit of money to pay off her portion of the community property. . . . He kept $20,000 and spent another $39,000. It's a little confusing in the record. From the business. The $20,000 he kept I think is fair to pay him for his labor on that house. So there's no reimbursement that he owes for the money that he took out of the company. . . . What I am going to have is that out of the $100,000, $130,000 in equity, $32,500 of that is going to first be taken out of the petitioner's share of the house. So he's going to get $32,500 of that equity, which leaves $97,500, which they then at that point will split 50-50.[30]

Andrisan argues the court incorrectly calculated each parties' share of the equity because the court subtracted the past due support from the full community equity amount. Andrisan contends the court should have divided the equity 50-50 and subtracted the past due support from Karaali's share of the equity.

To the extent that Andrisan implies the trial court mistakenly thought the first $32,500 of proceeds from the Woodinville house would compensate him for the full amount of the unpaid temporary support, we do not accept that premise. It is clear the court recognized any equity in the Woodinville house was community property. The court was not compelled to allocate Karaali's share of those proceeds to offset the full amount of unpaid temporary support. The trial court had the discretion to take the unpaid temporary support into consideration in view of

---

[30] Id. at 463-64. The decree of dissolution provides that Andrisan has the option to keep the house for himself if he pays Karaali $48,750.

the confused record regarding the money withdrawn from the business as well as its overall property division. Given the court's significant discretion in a dissolution and Andrisan's limited briefing, we conclude Andrisan does not establish the court abused its discretion.

## VI. Prejudicial Cross-Examination

Andrisan argues the court improperly allowed Karaali to question Andrisan about his immigration status.

The scope of cross-examination is within the discretion of the trial court.[31] Andrisan argues Karaali improperly asked him about his immigration status. But Andrisan does not provide any citation to authority or compelling argument to support his conclusory statement that these questions prejudiced the court's final ruling.[32]

Therefore, we affirm.

_____

WE CONCUR:

_____

---

[31] State v. Blair, 3 Wn. App. 2d 343, 350, 415 P.3d 1232 (2018).

[32] RAP 10.3(a)(6).