[No. 24518-0-I. Division One. November 26, 1990.]

*In the Matter of the Marriage of* GEORGE E. BULICEK, *Appellant, and* JANET A. BULICEK, *Respondent.*

*Kenneth E. Brewe,* for appellant.

*Lorna L. Bigsby,* for respondent.

BAKER, J.—We are asked to review a dissolution decree concerning disposition of retirement benefits and an award of maintenance.

I

George and Janet Bulicek were married in 1963 and separated 22 years later in 1985. A dissolution decree was entered in 1989. At the time of trial, the parties' net earned monthly income was approximately $2,500 for George, and $720 for Janet. Janet also received a monthly disability payment of $169.52. George was in good health. Janet had numerous health problems and was under a doctor's care. George was 52 and Janet was 46 years old at time of trial. The couple had one child who is now an emancipated adult.

At the time of their marriage, George had worked approximately 5 years for GTE in Chicago. When he began work for GTE Northwest in 1969, he received 40 months'

credit for that work in calculating his GTE Northwest pension. George was offered GTE's Enhanced Early Retirement Program in the fall of 1988, and he could have retired with $1,081.81 per month at the end of 1988. GTE's estimated value of the comparable lump sum distribution of the pension benefit was $130,405.27. George opted not to retire.

In September 1989, George became eligible for normal early retirement, receiving $948.18 per month or a lump sum distribution of approximately $111,000. This would be discounted 3 percent for each year that George is under the age of 55 at his retirement. George may choose normal early retirement anytime between September 1989 and his normal retirement date, April 2002. The trial court characterized the retirement benefits as a partly separate, partly community asset, allocating as separate property benefits earned before marriage and after separation. Out of 275 total accrued months of GTE employment, 185 months were community (67.3 percent) and 90 months were separate (32.7 percent). The court ordered that upon receipt of retirement benefits, the benefits should be divided with an award to Janet as follows:

$$\frac{1}{2} \times \frac{\text{Total months of Service During Marriage}}{\text{Total Months of Accredited Service at Retirement Date}} \times \text{Monthly Benefit at Retirement}$$

In other words, Janet would receive 1/2 x 185/275 or 33.65 percent of the monthly retirement benefit.

In addition, the trial court found Janet in need of maintenance and awarded her $500 per month for 1 year and $400 per month thereafter, terminating at her death or upon receipt of her monthly share of the GTE pension benefits.

## II

We first consider the issue of maintenance. George contends that the trial court abused its discretion in ordering

him to pay maintenance until he retires. Janet contends that the trial court considered the statutory factors set forth in RCW 26.09.090[1] and acted within its discretion in awarding her $500 per month for 1 year and $400 per month until George retires.

■■ The award of maintenance, like the division of property, is within the discretion of the trial court. *In re Marriage of Nicholson*, 17 Wn. App. 110, 561 P.2d 1116 (1977). The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just. *In re Marriage of Morrow*, 53 Wn. App. 579, 585, 770 P.2d 197 (1989). Factors listed in RCW 26.09.090 include the financial resources of each party; the duration of the marriage and standard of living during marriage; and the age, physical and emotional condition, and financial obligations of the spouse seeking maintenance, as well as the time needed by the spouse seeking maintenance to acquire education for appropriate employment.

George argues that maintenance should be rehabilitative in nature and transitional in duration, and should last only 1 or 2 years to allow Janet time to secure further job training. The record indicates that rehabilitation is not an issue here. The reality is that Janet does not live on income close

---

[1]The dissolution act of 1973 provided that the factors to be considered by the court in awarding maintenance include:

"(a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him, and his ability to meet his needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party as custodian;

"(b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his skill, interests, style of life, and other attendant circumstances;

"(c) The standard of living established during the marriage;

"(d) The duration of the marriage;

"(e) The age, physical and emotional condition, and financial obligations of the spouse seeking maintenance; and

"(f) The ability of the spouse from whom maintenance is sought to meet his needs and financial obligations while meeting those of the spouse seeking maintenance." Former RCW 26.09.090.

to the income that supported the couple's standard of living during marriage and will likely never achieve the postdissolution economic level of George.

Here, after a long-term marriage, Janet is in ill health and has limited job skills and experience. Trial courts are given wide discretion to fashion a dissolution order that will address the circumstances of the parties. Maintenance is one of those discretionary means.

George argues that the maintenance ordered here constitutes a permanent lien on an ex-husband's future income, a result disapproved in *Berg v. Berg*, 72 Wn.2d 532, 434 P.2d 1 (1967). The court there quoted from *Hogberg v. Hogberg*, 64 Wn.2d 617, 619, 393 P.2d 291 (1964):

> Alimony is not a matter of right. When the wife has the ability to earn a living, it is not the policy of the law of this state to give her a perpetual lien on her divorced husband's future income.

(Citations omitted.) *Berg v. Berg*, 72 Wn.2d at 533.

While the reasons for this policy include the valid goals of disentangling the divorcing spouses and setting each on a road to self-sufficiency, neither our current statutory language dealing with dissolution nor the known, postdissolution economic realities mandate a blind adherence to the language of the *Berg* court.[2]

 As the Supreme Court has noted, the spouse's ability for self-support is one factor to be considered under RCW 26.09.090(1)(a). In addition,

> [t]he duration of the marriage and the standard of living established during marriage must also be considered, making it clear that maintenance is not just a means of providing bare

---

[2]The reality is "that women still earn approximately 60% of what men do and that traditional female jobs tend to pay less than traditional male jobs." Washington State Bar Ass'n, *Family Law Deskbook* § 29.5 (1989). Further, in discussing the effects of no-fault and other equality-directed reforms in divorce law, one author noted:

> Most judges appear to view the law's goal of equality as a mandate to place an equal burden of support on men and women without regard to the fact that the parties' capacities to support that burden are clearly unequal by virtue of their differing experiences during marriage.

L. Weitzman, *The Divorce Revolution* 183 (1985).

necessities, but rather a flexible tool by which the parties' standard of living may be equalized for an appropriate period of time.

*In re Marriage of Washburn*, 101 Wn.2d 168, 179, 677 P.2d 152 (1984).

The postdissolution economic position of the parties "is a paramount concern in determining issues of property division and maintenance." *In re Marriage of Morrow*, 53 Wn. App. 579, 586, 770 P.2d 197 (1989) (quoting *In re Marriage of Washburn*, 101 Wn.2d at 181).

The *Washburn* court dealt with a 10-year marriage and the division of property and an award of maintenance to a party who had put her spouse through professional school. While recognizing that such a party obviously could be financially self-sufficient, maintenance was appropriate to allow the party "to share, temporarily, in the lifestyle which he or she helped the student spouse to attain." *Washburn*, 101 Wn.2d at 179.

■ Similarly, in the instant case we focus on the postdissolution relative economic positions of the parties. Here, George will be in a position to support a lifestyle more comparable to the lifestyle enjoyed by the couple during marriage than will Janet, given their relative earning powers. The trial court correctly perceived that Janet would be in need of more than temporary support. The court provided a thoughtful resolution of the maintenance and pension issues that allows Janet a continuous stream of income.

Whether the maintenance lasts 1 year or 13 years is George's choice. He is free to retire when he wishes. These parties were married for 26 years. George's income at trial was nearly three times larger than Janet's. Considering the relevant statutory factors, including the predissolution standard of living of the parties and their relative postdissolution status, it was well within the trial court's discretion to award maintenance to Janet in the amount and for the duration provided in its decree.

We hold that the trial court properly considered the statutory factors regarding maintenance and the facts in

this particular case and did not abuse its discretion in its award of maintenance.

### III

We next consider the trial court's disposition of pension rights. George contends that the formula adopted by the court improperly allows Janet to share in postseparation contributions to the plan. He argues that the straight percentage formula fails to account for increases in yearly contributions after separation. George asserts that due to his "increasingly greater work experience and expanding earning potential", his earnings and consequently his employer's contributions[3] for the remainder of his work career will be proportionately much higher than during marriage. The result is that Janet will in effect receive a portion of the postdissolution retirement contributions, which are his separate property. George further contends that the trial court should have given a value to the retirement benefits and apportioned them as of the time of trial, thus avoiding the problem of allowing Janet a share in his separate property.

██ ██ Pension benefits constitute property rights in the nature of deferred compensation, even if benefits are not presently available. *See Farver v. Department of Retirement Sys.*, 29 Wn. App. 138, 141, 629 P.2d 903 (1981), *aff'd*, 97 Wn.2d 344, 644 P.2d 1149 (1982). In deciding the distribution of property in a dissolution, the trial court has wide discretion. *Wilder v. Wilder*, 85 Wn.2d 364, 534 P.2d 1355 (1975). The court seeks a "just and equitable" distribution, considering all relevant factors, including:

(1) The nature and extent of the community property;
(2) The nature and extent of the separate property;
(3) The duration of the marriage; and
(4) The economic circumstances of each spouse at the time the division of property is to become effective, including the desirability of awarding the family home or the right to live therein for reasonable periods to a spouse having custody of any children.

Former RCW 26.09.080.

---

[3]The retirement plan is totally funded by employer contributions.

Washington courts have in the past sometimes divided pensions on an as–received basis using a percentage formula. In *Edwards v. Edwards,* 74 Wn.2d 286, 444 P.2d 703 (1968), the trial court equally divided pension benefits which were currently being received. The Supreme Court upheld the method of allocating the pension but reduced the wife's percentage from 50 percent to 25 percent because her earning power was larger than her husband's. This percentage allocation method, although not used in *DeRevere v. DeRevere,* 5 Wn. App. 741, 746, 491 P.2d 249 (1971), was cited by the court as one method of handling allocation of pension rights. The court said:

> One method of attempting to resolve the difficulties is to develop a percentage division of the monthly amount of the pension or retirement benefit which will remain constant during the period of time in which the pension is payable. *See Edwards v. Edwards,* 74 Wn.2d 286, 444 P.2d 703 (1968). Another method is to award the entire pension to one of the parties, generally the party whose work effort generated the pension, and to award to the other, in lieu of participation in the pension, a sum certain, which may, or may not, be payable over a specified time period.

*DeRevere,* 5 Wn. App. at 746.

In *In re Marriage of Pea,* 17 Wn. App. 728, 566 P.2d 212 (1977), the court computed the wife's community interest in her husband's military pension as follows:

$$\frac{1}{2} \ \times \ \frac{13 \text{ (years of marriage)}}{20 \text{ (years of military service)}} \ \times \ \text{Monthly Retirement Income}$$

*Cf. Wilder v. Wilder,* 85 Wn.2d 364, 534 P.2d 1355 (1975) (affirming fixed dollar award of $180 per month to wife from husband's Navy retirement income). The court in *In re Marriage of Pea, supra,* permitted the percentage rate (1/2 x 13/20 = 32.5 percent) to apply to the rate of retirement pay that would be received nearly 3 years after the date of trial, and to apply to any annual or cost of living increases. However, the court did not allow the percentage to "be applied to those increases in the pension due solely

to service beyond 20 years." *In re Marriage of Pea,* 17 Wn. App. at 732.

Several California cases have specifically addressed the method used by the trial court here to divide the pension, as respondent points out in her brief.

In *In re Marriage of Freiberg,* 57 Cal. App. 3d 304, 127 Cal. Rptr. 792 (1976), the court dealt with a Navy pension in a 12–year marriage. The husband had 5 years of service before marriage and the pension would vest in 3 years. He argued that retirement benefits should be calculated at the amount fixed at time of separation. The court rejected that argument, stating that the husband and wife were joint owners of the pension rights and entitled to share in increased benefits. The court upheld the trial court's percentage division of monthly retirement benefits. Similarly, in *In re Marriage of Adams,* 64 Cal. App. 3d 181, 134 Cal. Rptr. 298 (1976) the court found that the increase in retirement benefits after separation was not due from solely the separate efforts of the husband but was in fact enhanced by the many years of community efforts as well. Thus, the increases were not to be treated as separate property.

In the instant case, George and Janet were married for 22 years before separation. During all that time, George was employed at GTE. His advancements and pay raises during that time came as a direct result of community effort and performance. As in *In re Marriage of Adams, supra,* the prospective increase in retirement benefits due to increased pay after separation is founded on those 22 years of community effort.

We disagree with George's argument that this disposition of pension rights was unjust or inequitable. An award of pension rights on a percentage, as–received basis is to be encouraged. Such a disposition avoids difficult valuation problems, shares the risks inherent in deferred receipt of the income, and provides a source of income to both spouses at a time when there will likely be greater need for it. We acknowledge that George's retirement fund

may receive proportionately higher future contributions based upon his career longevity and anticipated increases in annual pay. We further acknowledge that the formula utilized for division of future retirement benefits could result in Janet's sharing in those increases. However, far from condemning this apportionment method, we specifically approve it as a means of recognizing the community contribution to such increases.

Appellant argues that *In re Marriage of Pea, supra,* requires a trial court to determine present value of future pension benefits where there is evidence to support such a determination, and prohibits use of a percentage allocation of future benefits on an as–received basis. We reject that analysis. In Washington, the trial court has wide discretion in awarding property in a dissolution. *See In re Marriage of Landry,* 103 Wn.2d 807, 699 P.2d 214 (1985). The court in *In re Marriage of Pea, supra,* states that where there is insufficient evidence to determine a present value of a pension plan, the trial court may use the percentage formula. Here, the testimony of the experts varied widely as to the value of the pension. Whether to accept those calculations was within the discretion of the trial court. We decline to rule that a court must determine a present value if any valuation testimony is presented, particularly where, as here, an alternate method provides an equitable solution.

We hold that the trial court did not abuse its discretion in awarding Janet a percentage of the pension on an as–received basis.

## IV

Janet contends that $1,000 in attorney's fees is so inadequate as to be an abuse of discretion.

In awarding attorney's fees in a dissolution, the trial court considers the need of the one party and the other party's ability to pay. Neither party is entitled to attorney's fees as a matter of right. *Valley v. Selfridge,* 30 Wn. App. 908, 639 P.2d 225 (1982).

Here, the court had all the facts before it in dividing property, awarding maintenance, and setting attorney's fees. The amount of attorney's fees does appear low given the large disparity in income between the parties. Even after the real property is liquidated and the proceeds split between the parties, Janet's payment of her attorney's fees may leave her in an economically disadvantaged position in comparison with her ex–husband. However, we cannot conclude that the trial court abused its discretion in the award of these attorney's fees and we therefore affirm.

## V

As to attorney's fees on appeal, RCW 26.09.140 provides for an award of reasonable attorney's fees for maintaining or defending an action under RCW 26.09. A review of the materials submitted reveals total fees of $6,940 payable by Janet for her attorney's services. We award Janet $6,940 as reasonable attorney's fees. RAP 18.1.

The decision of the trial court is affirmed.

WINSOR and FORREST, JJ., concur.