Timothy M. **Thornburgh**,
Plaintiff/Appellee,

v.

Thomasa L. **Thornburgh**,
Defendant/Appellant.
Appeal No. 96-050
Civil Action No. 96-0078
November 24, 1997

Argued and Submitted September 29, 1997

Counsel for Appellant: Jane Mack, Micronesian Legal Services Corp. - Marianas Office, Saipan.

Counsel for Appellee: Stephen J. Nutting, Saipan. (White, Pierce, Mailman & Nutting)

BEFORE: TAYLOR, Chief Justice, VILLAGOMEZ and ATALIG, Justices.

TAYLOR, Chief Justice:

¶1 ▮Appellant, Thomasa L. Thornburgh ("Thomasa"), appeals the award of "rehabilitative" alimony entered by the Superior Court's Divorce Decree dated November 20, 1996. We have jurisdiction under title 1, § 3102(a) of the Commonwealth Code. We affirm.

## ISSUES PRESENTED AND STANDARD OF REVIEW

Thomasa raises two issues for our review:
I. Whether the Superior Court erred in its interpretation of Commonwealth law on what circumstances to consider in awarding alimony; and
II. Whether the Superior Court erred in applying the law and wrongly limited spousal support to seven months of "rehabilitative" alimony.

¶2 ▮Thomasa contends that the determination of which factors the court is required by law to consider in awarding alimony under Commonwealth law is an issue of first impression. It is reviewable de novo as it presents a question of law. *Ada v. Sablan*, 1 N.M.I. 415, 422 (1990).

¶3 ▮Whether the trial court appropriately limited alimony, considering all relevant factors, also presents an issue of first impression. It is well-settled in American jurisprudence that the amount of an award of maintenance, spousal support, or alimony is within the sound discretion of the trial court and its determination will not be disturbed on appeal absent a showing of manifest abuse of discretion, or the decision is contrary to the manifest weight of the evidence. *Washburn v. Washburn*, 677 P.2d 152, 158 (Wash. 1984) (internal citations omitted); *Ahlo v. Ahlo*, 619 P.2d 112, 177 (Haw. Ct. App. 1980). The burden is on the appellant to show that the court abused its discretion. *Fowler v. Fowler*, 272 P.2d 546, 548 (Cal. Dist. Ct. App. 1954).

## FACTS AND PROCEDURAL BACKGROUND

¶4 Thomasa and appellee, Timothy H. Thornburgh

("Tim"), were married on September 17, 1977, in Ulithi, Yap. During their marriage, they had four children: Thomas, Terrence, William and David. All are adults, except for David. Tim filed for divorce on January 24, 1996, and Thomasa counterclaimed. In his answer to Thomasa's counterclaim, Tim admitted the grounds for divorce and the Superior Court granted a divorce based on adultery pursuant to 8 CMC § 1331(a).

¶5 The parties did not accumulate any substantial wealth or debt during their eighteen and one-half years of marriage, and they do not own any real property. Tim is presently employed as a grant writer for the Public School System ("PSS"). The Superior Court noted that his annual gross income is approximately $36,600.00 plus $7,200.00 in housing benefits. Thomasa was trained as a graduate nurse. Except during a brief period, she has not worked in the field of nursing throughout the marriage. At the time of the divorce, Thomasa was enrolled in the Nurse Assistant Program at the Northern Marianas College ("NMC") and was scheduled to complete the program in January 1997.[1] The Superior Court found that she would be employed after completing the program since it has a one-hundred per cent placement record and she would earn approximately $1,000 per month as a Nurse Assistant.

¶6 In its conclusion, the Superior Court ordered the following: $250.00 per month as child support for their minor son David, who lives with Thomasa, until he reaches the age of majority or is otherwise emancipated; $1,400.00, representing one-half the value of the personal marital property which Tim removed from the marital home in April 1996; Thomasa is entitled to receive her marital share of Tim's pension accrued through September 1996; Tim shall assume all marital debts and obligations prior to their separation on April 14, 1996; and ten months of "rehabilitative alimony" of $1,000.00 per month commencing September 5, 1996 and terminating June 5, 1997.[2] Thomasa timely appealed.

## ANALYSIS

¶7 Thomasa argues that she requires a long term, permanent or indefinite alimony, rather than a short-term of "rehabilitative" alimony given her age (52), her

---

[1] There is no mention in the parties' briefs, as to whether Thomasa successfully completed the NMC Nurse Assistant program, and whether she is currently employed and generating any income. At oral arguments, appellant's counsel informed the Court that Thomasa had not completed the NMC training program as scheduled.

[2] *Thornburgh v. Thornburgh.* Civil Action No. 96-0078 (N.M.I. Super. Ct. Nov. 20, 1996) (Findings of Fact and Conclusions of Law; Divorce Decree at 5-6) ("Divorce Decree").

education level (she speaks English as a second language and has proficiency at the third to sixth elementary school grade level; her math skills are at a "developmental level"), her lack of work experience, and her nineteen years of loyal commitment to the marriage as a homemaker and wife.

¶8 Tim, on the other hand, argues that Thomasa needs "rehabilitative support" only until she acquires the necessary education and training to become independent. Once Thomasa graduates from the NMC Nurse Assistant program, Thomasa should become gainfully employed and an additional award of indefinite alimony is unnecessary.

I. *Did the Superior Court err in its interpretation of Commonwealth law on what circumstances to consider in awarding alimony?*

¶9 ■ The Commonwealth Code provides for an order of spousal support as the Court "deems justice and the best interests of all concerned may require." 8 CMC § 1311. The Superior Court noted that the legislature did not give further guidance to the courts in determining when and under what circumstances alimony or spousal support should be awarded. In the absence of written law or local customary law to the contrary, the courts must apply the rules of the common law, as generally understood and applied in the United States. 7 CMC § 3401. Thomasa argues that by ignoring the depth and breadth of the common law on the subject of alimony, and by failing to adequately address the issue of alimony, the Superior Court misstated the common law, and that its failure to review and apply the common law on alimony constitutes reversible error.

¶10 ■ The Superior Court noted that spousal support is wholly statutory and not a common law right, citing *Gottsegen v. Gottsegen,* 492 N.E.2d 1133 (Mass. 1986).[3] The fundamental purpose of alimony is to provide economic support to the dependent spouse. *Id.* The Superior Court noted that the key factors in determining whether alimony should be awarded are: (1) the dependent spouse's need for support and maintenance; and (2) the supporting spouse's ability to pay. *Id.*; *Brown v. Brown,* 300 So.2d 719 (Fla. App. 1974). After noting that the legislature failed to give the court further guidance on when and under what circumstances to award alimony, the Superior Court agreed with the Washington Supreme Court which stated "[a]limony is not a matter of right. When the wife has the ability to earn a living, it is not the

---

[3] While the power to grant alimony is set forth by statute, alimony is based upon "the *common law right of* marital support" or, alternatively, the "*common law right* of wife to support by the husband." *Metcalf v. Metcalf,* 51 S.W.2d 675, 677 (Ky. Ct. App. 1932); *Collins v. Collins,* 130 S.W.2d 37, 38 (Ky. Ct. App. 1939).

policy of the law of this state to give her a perpetual lien on her divorced husband's future income." *Dakin v. Dakin*, 384 P.2d 639, 642 (Wash. 1963).[4]

¶11 ■ Since the law in the Commonwealth is broad, and our statute provides for alimony when the Court deems it is in the "best interests" of the parties,[5] the trial court judge is given discretion to award alimony, if any, and to determine an equitable amount. In the absence of statutory guidance to the contrary, we find no error in the Superior Court's interpretation of Commonwealth law on what circumstances to consider in awarding alimony.

---

[4] Subsequent decisions of the Washington Supreme Court have expressly looked upon the *Dakin* court language with disfavor. The *Bulicek* Court rejected blind adherence to the language of prior cases which reiterated *Dakin*'s language: "alimony is not a matter of right. When the wife has the ability to earn a living it is not the policy of the law of this state to give her a perpetual lien on her divorced husband's future income." *Bulicek v. Bulicek*, 800 P.2d 394, 397 (Wash. Ct. App. 1990). The *Bulicek* court stated as follows:

> While the reasons for this policy [*Dakin* language] include the valid goals of disentangling the divorcing spouses and setting each on a road to self-sufficiency, neither our current statutory language dealing with dissolution nor the known, post-dissolution economic realities mandate a *blind adherence* to the language of the [*Dakin*] court.

*Id.* at 397 (emphasis added).

[5] When Pennsylvania amended its divorce laws, for example, lawmakers provided judges with a set of seventeen statutory factors believed relevant for deciding alimony awards, including: relative earning and earning capacities of the parties; ages and physical, mental, and emotional conditions of the parties; sources of income of both parties, including, but not limited to, medical, retirement, insurance, or other benefits; expectancies and inheritances of the parties; duration of the marriage; contribution by one party to education, training, or increased earning power of the other party; extent to which the earning power, expenses, or financial obligations of a party will be affected by reason of serving as the custodian of a minor child; standard of living of the parties established during the marriage; relative education of the parties and time necessary to acquire sufficient education or training to enable the party seeking alimony to find appropriate employment; relative assets and liabilities of the parties; property brought to marriage by either party; contribution of a spouse as homemaker; relative needs of the parties; marital misconduct of either parties during the marriage; federal, state, and local tax ramification of the alimony award; whether party seeking alimony lacks sufficient property, including, but not limited to, equal distribution of property; and whether party seeking alimony is incapable of self-support through appropriate employment. Phyllis D. Coontz, *Alimony Awards and the Search for Equity in the No-Fault Divorce Era*, 18 Just. Sys. J. 103, 105 (1995).

## II. The Superior Court Did Not Abuse its Discretion in Awarding "Rehabilitative" Alimony.

¶12 Thomasa contends the Superior Court erred in applying the law and wrongly limited spousal support to seven months of "rehabilitative" alimony. We recognize that "rehabilitative" alimony is normally awarded in no-fault divorce jurisdictions.[6] However, the divorce laws of the Commonwealth are based upon the more traditional, fault principles of divorce law. That is, before no-fault, "alimony was viewed as part of a husband's *continuing obligation* to support his wife (based on the view that marriage was a sacrament and thus indissoluble) and as a *punishment* for the breakdown of the marriage."[7]

¶13 ■ Under no-fault jurisdictions when the grounds for divorce shifted from blame to incompatibility, alimony became a conditional means of support until the disadvantaged spouse, typically the wife, became self-sufficient.[8] No longer was alimony thought to be an automatic right of a married woman, but rather, in an effort to be gender neutral, alimony under no-fault was justified for the dependent spouse requiring temporary support to become self-sufficient.[9] Awarding "rehabilitative" alimony in a fault jurisdiction does not amount to an abuse of discretion as the trial court judge under 8 CMC § 1311 is given wide discretionary authority to award spousal support in the "best interests" of the parties.

¶14 At oral arguments, appellant's counsel informed the Court that Thomasa received an additional award of alimony under a "pendente lite" order awaiting the outcome of this appeal. Since the court below has retained jurisdiction over this matter, Thomasa would be allowed to petition the Superior Court for additional review should there be a change in the parties' circumstances. However, we find no reversible error in the Superior Court's decision.

## CONCLUSION

¶15 Based upon the foregoing reasons, we hereby **AFFIRM** the Superior Court's decision.

---

[6] *Id.*

[7] *Id.* at 104 (emphasis in original) (internal citations omitted).

[8] *Id.*

[9] *Id.*