**FILED**
**JANUARY 10, 2017**
In the Office of the Clerk of Court
WA State Court of Appeals, Division III

IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| CYNTHIA VENEZIANO, | ) | |
| | ) | No. 33593-3-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | UNPUBLISHED OPINION |
| PATRICIA J. CHVATAL, | ) | |
| | ) | |
| Respondent. | ) | |

SIDDOWAY, J. — Cynthia Veneziano appeals the trial court's summary judgment dismissal of her legal malpractice action against Patricia Chvatal, arising out of Ms. Chvatal's negotiation of the division of marital assets in Ms. Veneziano's divorce. Ms. Veneziano's legal experts testified that Ms. Chvatal's approach to the negotiated division of Mr. Veneziano's pension—a major marital asset—undervalued Ms. Veneziano's interest and fell below the standard of care. While the trial court agreed with Ms. Veneziano that her evidence presented genuine issues of fact on most elements of her malpractice claim, it found her evidence lacking on the required element of proximately-caused harm.

Ms. Veneziano assigns error to the trial court's refusal to grant her a continuance of the motion, its decision on the merits of the summary judgment motion, and its denial of her motion to supplement the record or for reconsideration. We find her challenge to

the trial court's decision on the merits to be dispositive. We reverse the order dismissing her complaint and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

Cynthia Veneziano and her ex-husband, Tim Veneziano, lived together as husband and wife for 21 years before separating in 1997. In January 2001, the court entered findings of fact and conclusions of law along with a decree of legal separation. An order converting the decree of legal separation to a decree of dissolution was entered in August 2005.

Patricia Chvatal represented Cynthia Veneziano in the dissolution action and negotiated the terms of the parties' property division on Ms. Veneziano's behalf. Among assets divided was a pension earned through Mr. Veneziano's employment with Fluor Daniel Hanford. A qualified domestic relations order (QDRO) divided the pension between the parties on the following terms ("Alternate Payee" refers to Ms. Veneziano):

> 4. Interest of the Alternate Payee to the Participant's Pension Plan. This Order hereby creates and recognizes the existence of the Alternate Payee's right to receive fifty (50) percent of the Participant's monthly benefit that has accrued from the date of marriage (10/17/76) to 01/01/00.
>  . . . .
> 6. Calculation of Amount of Pension Plan Payment. The calculation of the amount of payments to the Alternate Payee shall be based on fifty (50) percent of the Participant's monthly accrued benefits as of Jan. 1, 2000, under the terms of the Plan at the time benefits are available under the Plan to be paid to the Alternate Payee.

2

Clerk's Papers (CP) at 63. Based on the January 2000 valuation, Ms. Veneziano would receive $1,363.15 monthly upon reaching age 65, that being half of her husband's $2,726.00 monthly benefit accrued as of the valuation date. This approach to dividing the pension is referred to by Washington cases as the "subtraction method." *See, e.g., In re Marriage of Rockwell*, 141 Wn. App. 235, 251, 170 P.3d 572 (2007).

In 2007, Ms. Veneziano was notified by the plan administrator of the Hanford Site Multi-Employer Pension Plan that due to a change in plan administration, the lump sum benefit available would more likely than not decrease if not taken by the end of 2007. The lump sum benefit, as she understood it, was the present value of the monthly payments to which she would be entitled beginning at age 65. Not wanting to lose value, Ms. Veneziano elected to take the distribution before year-end and rolled it into an individual retirement account (IRA). The total amount she rolled into the IRA was $115,899.10.

Mr. Veneziano retired on July 29, 2011, and, according to Ms. Veneziano, his monthly pension benefit was then calculated as $6,857.00. Troubled by the large disparity between his monthly payment and what she expected to be able to draw from her IRA, Ms. Veneziano began contacting attorneys. She was informed by attorney Gary Stenzel, who she later retained as an expert, that under the "time rule" method for dividing pensions approved in *In re Marriage of Bulicek*, 59 Wn. App. 630, 800 P.2d 394 (1990), the division of Mr. Veneziano's pension would have been much more favorable

3

to her. *Rockwell*, 141 Wn. App. at 251 (describing the approach approved in *Bulicek* and applied in later cases as the "time rule" approach). According to Ms. Veneziano, Ms. Chvatal never informed her that there were alternative approaches to dividing Mr. Veneziano's pension.

In June 2014, Ms. Veneziano filed a pro se complaint alleging that Ms. Chvatal committed legal malpractice and breached her contract of representation when she negotiated the division of assets in a manner falling below the standard of care. Ms. Veneziano later retained a lawyer to represent her in the action.

Ten months after the action was filed, Ms. Chvatal moved for summary judgment dismissal of Ms. Veneziano's complaint on several grounds. She supported her motion with declarations from two lawyers who expressed the opinion that Ms. Chvatal's representation did not fall below the standard of care.

A week after the motion was filed, Ms. Veneziano's lawyer moved to continue the summary judgment hearing. He argued a continuance was needed because he had not received responses to written discovery or had the opportunity to depose Ms. Chvatal or her experts. The court denied the motion, concluding that the issues raised by Ms. Chvatal's motion turned on information already available to Ms. Veneziano.

Ms. Veneziano then filed materials opposing the summary judgment motion, including her own declaration and the declarations of two lawyers who expressed the opinion that Ms. Chvatal's representation did fall below the standard of care.

4

After hearing argument of the motion, the trial court agreed with Ms. Veneziano that she had demonstrated a genuine dispute over whether Ms. Chvatal provided deficient representation. But it concluded that Ms. Veneziano failed to present evidence of proximate cause, an essential element of a legal malpractice claim, and granted summary judgment on that basis.

Before the presentment of Ms. Chvatal's proposed order and judgment, Ms. Veneziano moved to supplement the record or for reconsideration. The trial court denied the motions and entered judgment dismissing the complaint.

ANALYSIS

We review summary judgment orders de novo, considering the evidence and all reasonable inferences from the evidence in the light most favorable to the nonmoving party. *Keck v. Collins*, 184 Wn.2d 358, 370, 357 P.3d 1080 (2015). Summary judgment is appropriate when the moving party shows there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c).

A defendant may move for summary judgment on the ground that the plaintiff lacks competent evidence to support essential elements of the plaintiff's claim. *Young v. Key Pharm., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989), (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)). After a party moving for summary judgment submits adequate affidavits, the nonmoving party must set forth specific facts rebutting the moving party's contentions and demonstrating that a genuine

5

issue of material fact exists. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 12-13, 721 P.2d 1 (1986).

In order to succeed on a claim for legal malpractice, a plaintiff must establish (1) an attorney-client relationship giving rise to a duty of care on the part of the attorney to the client, (2) breach of the duty, (3) damage to the client, and (4) proximate causation between the attorney's breach of duty and the damage suffered by the client. *Hizey v. Carpenter*, 119 Wn.2d 251, 260-61, 830 P.2d 646 (1992). Here, the trial court granted summary judgment on the issue of causation, which is the only matter raised as a basis for summary judgment that is adequately briefed on appeal.[1]

To prove causation, the client must show that the outcome of the underlying litigation would have been more favorable but for the attorney's negligence. This proof typically requires a "trial within a trial." *Kommavongsa v. Haskell*, 149 Wn.2d 288, 300-01 & n.5, 67 P.3d 1068 (2003) (citing *Daugert v. Pappas*, 104 Wn.2d 254, 257, 704 P.2d 600 (1985)). The trier of fact will be asked to decide what a reasonable fact finder would have done but for the attorney's negligence. *Ang v. Martin*, 154 Wn.2d 477, 482, 114

---

[1] Ms. Chvatal refers in her factual statements to other issues she raised and that were rejected by the trial court, but she does not persuasively support them in discussing them factually nor does she address them in her argument. She refers, e.g., to her arguments in the trial court that (1) Ms. Veneziano's decision to lock in a likely-more-favorable valuation approach by taking a distribution in 2007 renders her claim moot and (2) the *Bulicek* approach could not be applied to the Hanford Site plan. We infer that Ms. Chvatal did not intend for us to address those arguments. If she did, her briefing is inadequate. See RAP 10.3(a)(6).

P.3d 637 (2005) (citing *Daugert*, 104 Wn.2d at 258). The issue of proximate cause is ordinarily a question for the trier of fact, but it may be determined on summary judgment "where the evidence is undisputed and only one reasonable conclusion is possible." *Fabrique v. Choice Hotels Int'l, Inc.*, 144 Wn. App. 675, 683, 183 P.3d 1118 (2008).

In granting Ms. Chvatal's motion, the court below ascribed a burden of proof to Ms. Veneziano on this issue at the summary judgment stage, stating that to avoid dismissal, "[T]he Plaintiff must show that she *would have prevailed* at a dissolution of marriage trial with regard to a different pension division." CP at 396-97 (emphasis added). It found the absence of a material issue of fact, because "[t]here is nothing in the record that Plaintiff *would have done better* in the divorce had the case gone to trial." *Id.* at 397 (emphasis added). Properly framed, the issue for the trial court on summary judgment was not whether Ms. Veneziano demonstrated that she *would have fared better*. It was whether Ms. Veneziano presented evidence from which a trier of fact could (not would) find that if she had received proper legal advice and advocacy, her ex-husband would have agreed to an asset division more favorable to Ms. Veneziano or the court would have ordered one. Upon a showing of that genuine possibility, the question of causation was one for the trier of fact to resolve through a trial within a trial.

Ms. Chvatal states the issue slightly differently on appeal, arguing that no evidence Ms. Veneziano presents "supports a *prima facie* case that [she] can prove she could have done better on a pension and maintenance award" and that she "has not

7

presented any evidence that a trial judge would have ordered more maintenance or a different division of the pension." Br. of Resp't at 18. Even where causation is genuinely in dispute, the plaintiff will not be able to present evidence on summary judgment that but for substandard representation, she "would have" fared better—just as the defendant will not be able to present evidence that but for the substandard representation the plaintiff would have fared the same. What the plaintiff must be able to demonstrate is that competent legal advice and advocacy would have made a material difference in the strength of her position. It is precisely because neither side can show what "would have" happened that a trial within a trial is required to resolve the issue of causation.

Ms. Veneziano made the necessary showing. She presented the declaration of Mr. Stenzel, a family law practitioner, who testified that as a defined benefit plan, the Hanford Site pension "would have been appropriate for division under the *Bulicek* formulation." CP at 240. Yet a "decision that Ms. Chvatal seems to have immediately made[2] to use a fixed percentage method of division affected substantial rights of her client" in the following respects:

---

[2] Ms. Chvatal had not been deposed at the time of the summary judgment decision, which was among the discovery the trial court deemed unnecessary in denying the continuance request. The inference drawn by Mr. Stenzel, like others, is viewed in the light most favorable to the nonmoving party.

8

> [The *Bulicek* approach] multiplies the non-participant's percentage share times the plan participant's <u>final wage</u>. The idea encapsulated in *Bulicek* is that the wages of the participant will continue to increase after the dissolution in part because of the good work done during the time of the marriage, or put another way, because of the effect of community efforts. Wages increase over time because of promotion, seniority, and responsibilities. . . . [T]hey also increase due to increases in the cost of living.

CP at 240-42. Elsewhere, Mr. Stenzel explained that by dividing the pension as of January 1, 2000, using the value it had if Mr. Veneziano had retired that day, "[t]he effect . . . was to provide a smaller amount to the wife than would have been the case had the *Bulicek* formulation been used and a clear failure to consider community efforts and their impact on Ms. Veneziano's portion. This was a deviation below the standard of care." CP at 240.

Michael W. Bugni, also a family law practitioner and Ms. Veneziano's second expert, testified that Ms. Chvatal evidently had no reason to believe that Mr. Veneziano had plans to retire anytime soon. According to Mr. Bugni, the possible or likely continuation of Mr. Veneziano's employment "changes the whole nature of the equities in dividing a defined benefit pension." CP at 249. Mr. Bugni explained:

> The ultimate defined benefit is a function of the employee's final salary at the time of his retirement. As the years pass the value of his benefit invariably increases as a function of cost of living increases, length of service and/or raises based upon merit and promotion. . . . All that time, the fixed monthly percentage set in January 2001 declines in value as inflation takes away buying power. Further, the contributions that the alternate payee made to the advancement of her former spouse, which form the bedrock for future promotion, no longer appreciate. The *Bulicek* court

9

recognized this economic disparity in 1990. This brought about a change in the standard of care that lawyers in this field need to provide in fulfilling their duty to be reasonably prudent. The old ways changed and the time rule division became the standard of care. That was certainly the case in January 2001 when this QDRO and Decree of Separation were entered.

. . . A properly prepared QDRO in 2001 would have implemented the *Bulicek* formula in dividing the husband's pension.

CP at 249-50.

This evidence raises a genuine issue as to whether, had Ms. Chvatal advised Ms. Veneziano of the advantage of the *Bulicek* valuation approach and advocating for that approach, it would have made a material difference in the share of marital assets Ms. Veneziano could reasonably argue should be allocated to her.

We also reject the notion seemingly accepted by the trial court that Ms. Veneziano should have (but failed) to oppose summary judgment with sworn testimony that but for Ms. Chvatal's breach of the standard of care, "she would not have accepted the terms and conditions of . . . the decree of legal separation as it was adopted through subsequent amended findings." Report of Proceedings (RP) at 68. Nothing in Ms. Chvatal's motion for summary judgment challenged Ms. Veneziano's ability to present evidence that she would have rejected the decree's terms had she known that a time rule valuation was more advantageous to her.

Even when a defendant moves for summary judgment on the basis that the nonmoving party lacks sufficient evidence to support her case, it must identify why it believes there is the absence of a genuine issue of fact. It must identify the portions of

10

the record, together with the affidavits, if any, that demonstrate that absence. *Indoor Billboard/Wash., Inc., v. Integra Telecom of Wash., Inc.*, 162 Wn.2d 59, 70, 170 P.3d 10 (2007); CR 56(c). No burden shifts to the nonmoving party until the moving party meets this burden. *Id., and see R.D. Merrill Co., v. Pollution Control Hr'gs Bd.*, 137 Wn.2d 118, 147, 969 P.2d 458 (1999) ("[N]othing in CR 56(c) allows the raising of additional issues other than in the motion and memorandum in support of the motion.") Nowhere in Ms. Chvatal's motion or memorandum did she argue that Ms. Veneziano lacked evidence that she would have behaved differently if she had been better informed. Ms. Veneziano was not required to respond with opposition evidence to an issue that was not raised by the motion for summary judgment.

In addition, the declarations of Mr. Stenzel and Mr. Bugni characterize the advice and advocacy that Ms. Chvatal failed to provide as advice and advocacy that would be material to any client in Ms. Veneziano's position. In drawing all inferences favorable to Ms. Veneziano, we can infer that the advice and advocacy that was lacking would have been material to her and affected her decisions.

Because we conclude that the trial court erred in ruling that Ms. Veneziano failed to demonstrate a genuine issue as to proximate cause, we need not reach her remaining assignments of error.

We reverse the order granting summary judgment and remand for proceedings consistent with this opinion.

11

No. 33593-3-III
*Veneziano v. Chvatal*

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

Siddoway, J.

WE CONCUR:

Lawrence-Berrey, A.C.J.

Pennell, J.