# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

In the Matter of the Marriage of:

HECTOR MONTALVO,

                Appellant,

and

VICTORIA MONTALVO,

                Respondent.

DIVISION ONE

No. 83737-1-I

UNPUBLISHED OPINION

DWYER, J. — Hector Montalvo challenges the trial court's finding that he has a history of domestic violence and the parenting plan requirement that he obtain a psychological evaluation. Additionally, Hector[1] challenges the trial court's award of spousal maintenance to Victoria for a period of 10 years. Finding no error, we affirm.

I

Hector and Victoria Montalvo were married on April 3, 1995 in Houston, Texas. They relocated to Seattle in 2004. The parties had four children, Asis, Emanuel, J.M., and A.M. J.M., who was 23 years old at the time of trial, has autism and severe anxiety, which prevent him from being able to live independently. A.M., who is still a minor child, also has autism and additionally suffers from juvenile arthritis. A.M. and J.M. are both dependent on Victoria for

---

[1] We refer to the parties by their first names to avoid confusion. No disrespect is intended.

their financial and medical needs. Due to A.M. and J.M.'s limitations and their frequent medical appointments, Victoria did not work outside the home.

The parties separated on March 20, 2013. Hector petitioned for dissolution in December 2020. After Hector moved for default, Victoria responded to the petition and requested that a protection order be entered on her behalf.

A bench trial was conducted remotely via Zoom on January 10 and 28, 2022. Both parties appeared pro se. The only testifying witnesses were the parties themselves.

The trial court entered its findings and conclusions about a marriage, final child support order, and final parenting plan on February 2, 2022. In its findings and conclusions, the trial court found that the parties' community property consisted of two lots of real property in Mexico, three vehicles, and the various furnishings, fixtures, appliances, and electronics located at both of the parties' residences. The trial court found that neither party possessed any separate personal property.

The court awarded spousal maintenance to Victoria in the amount of $1,300 per month, payable until January 2032. As explained in its findings of fact, this was because

> The financial resources of the party seeking maintenance, there is little to [no] separate or community property available to be apportioned to her, nor ability to meet her needs independently. Although child support is sought the parties have two children (ages 13 and 23) who are both autistic and still live at home with their mother. The youngest child's condition is more severe, and he has also been diagnosed with juvenile arthritis. Prior to COVID the

2

> mother was typically taking the children to seven different appointments every week, addressing counseling, behavioral treatment, feeding therapy and medical appointments with a rheumatologist. The mother has been a stay-at-home parent and needs to acquire sufficient education or training (while paying for childcare) to enable her to secure employment appropriate to her skill, interests, style of life, and other attendant circumstances. The standard of living during the marriage supports awarding maintenance.

Finding of Fact 13.

The trial court also granted Victoria's request for a protection order, as it found that Hector had a demonstrated history of domestic violence and multiple violations of no-contact orders previously obtained by Victoria. Finding of Fact 15. The order was effective through February 4, 2023.

The trial court additionally ruled that restrictions on Hector's residential time and decision making were warranted, due to its findings that Hector had committed domestic violence, assault, and child abuse. Parenting Plan ¶¶ 3, 16. Moreover, the trial court found that Hector had neglected his parental duties towards A.M. and that it "suspect[s] that he has mental health problems." Parenting Plan ¶ 3. Accordingly, the trial court ordered that Hector have no contact with A.M. and that he obtain a psychological evaluation and comply with any recommended treatment.

Hector timely appeals.

II

Hector asserts that the trial court erred by finding that he had a history of domestic violence. This is so, he avers, because no acts of domestic violence occurred in the seven years leading up to trial. Hector's argument lacks merit.

3

We will not reverse a trial court's findings of fact so long as they are supported by substantial evidence. Petters v. Williamson & Assocs., Inc., 151 Wn. App. 154, 163, 210 P.3d 1048 (2009). "Substantial evidence is evidence in sufficient quantum to persuade a fair-minded person of the truth of the declared premise." Holland v. Boeing Co., 90 Wn.2d 384, 390-91, 583 P.2d 621 (1978). On substantial evidence review, all evidence is construed in favor of the prevailing party. Mangan v. Lamar, 18 Wn. App. 2d 93, 95, 496 P.3d 1213 (2021).

Substantial evidence supports the trial court's finding that Hector had a history of domestic violence. Victoria previously obtained three separate protection orders prohibiting Hector from contacting her, a fact which he does not dispute. Additionally, Victoria testified that during the parties' marriage, Hector "would hit the kids and be angry with them because he would not tolerate their behaviors," prohibited her from entering the house, and threw objects such as a pot of coins and hot dogs at her, among other acts of violence.

That these incidents may have occurred multiple years prior to trial is irrelevant for purposes of entering restrictions in the parenting plan.[2] RCW 26.09.191 requires a trial court to allot decision making to one parent and limit a parent's residential time if it finds that the parent has "a history of acts of

---

[2] Hector also asserts that the court's allegedly erroneous findings of fact do not support the imposition of a protection order prohibiting him from contacting Victoria. However, Hector did not assign error to any provisions of the protection order and his argument is entirely focused on the parenting plan. We will not consider arguments that are undeveloped. Smith v. King, 106 Wn.2d 443, 451-52, 722 P.2d 796 (1986).

domestic violence as defined in RCW 7.105.010."[3]  RCW 26.09.191(1), (2)(a)(iii). The only exception to this rule occurs when the trial court "expressly finds based on the evidence that contact between the parent and the child will not cause physical, sexual, or emotional abuse or harm to the child and that the probability that the parent's or other person's harmful or abusive conduct will recur is so remote that it would not be in the child's best interests to apply" any restrictions on the parent's residential time.  RCW 26.09.191(2)(n).

We recently held that given the use of the word "shall" in RCW 26.09.191(1) and (2), the trial court did not have discretion to decline to enter restrictions against a parent with a history of domestic violence, regardless of how remote in time the domestic violence may have occurred.  In re Parenting and Support of C.A.S., 25 Wn. App. 2d 21, 30, 522 P.3d 75 (2022).  Therein, the father had not been convicted of a crime of domestic violence in the 11 years prior to trial, and "there was no credible evidence" that the father had engaged in domestic violence during that time.  C.A.S., 25 Wn. App. 2d at 30.  Nonetheless, we held that the trial court's decision to decline to enter a factual finding that the father had a history of domestic violence constituted an abuse of discretion, as such a finding was mandatory in light of the evidence that the father had been convicted of multiple domestic violence offenses.  C.A.S., 25 Wn. App. 2d at 30.

---

[3] RCW 7.105.010(9) defines domestic violence as "[p]hysical harm, bodily injury, assault, or the infliction of fear of physical harm, bodily injury, or assault; nonconsensual sexual conduct or nonconsensual sexual penetration; coercive control; unlawful harassment; or stalking" of one household member or intimate partner by another.

Hector's argument fails for the same reason that the argument failed in C.A.S. The evidence presented at trial demonstrated that Hector had three domestic violence protection orders entered against him and had previously committed acts of domestic violence against Victoria, neither of which Hector disputed. The trial court properly entered a finding that Hector had a history of domestic violence. In turn, the court was required to award sole decision making to Victoria and to restrict Hector's residential time in the absence of any express findings that contact between Hector and A.M. would be in the child's best interests. The trial court therefore did not err.

III

Hector next asserts that the trial court erred by ordering him to undergo a psychological evaluation as part of the parenting plan. This is so, he asserts, because the trial court's finding that he may have mental health problems is not supported by substantial evidence. We disagree.

"Generally, a trial court's rulings dealing with the provisions of a parenting plan are reviewed for abuse of discretion." In re Marriage of Littlefield, 133 Wn.2d 39, 46, 940 P.2d 1362 (1997). "A trial court abuses its discretion if its decision is manifestly unreasonable or based on untenable grounds or untenable reasons." Littlefield, 133 Wn.2d at 46-47.

The trial court's order that Hector obtain a psychological evaluation in order to resume contact with his one minor child was based on its finding that it "suspect[s] that he has mental health problems." This finding was supported by substantial evidence. At trial, Victoria testified that Hector "claims that he is the

6

savior, he is the one that the world has been awaiting. He is like a Buddha. He will save human kinds." Victoria also testified that Hector did not understand what a no-contact order is, even after his children tried explaining it to him. Although Hector argues that this testimony was not credible, the trial court found that it was. We will not disturb the trial court's determinations of credibility. See Currier v. Northland Servs., Inc., 182 Wn. App. 733, 741, 332 P.3d 1006 (2014).

Additionally, the trial court witnessed Hector's possible mental health issues first-hand. Throughout trial, Hector appeared to be unable to understand that he was the one who petitioned for dissolution. For example, when the trial court asked why Hector had not completed the family court services questionnaire, Hector responded that he "didn't know what all of this was about" and that he did not know "how to respond to all these charges." As another example, on the second trial day, Victoria asked Hector "what are his responsibilities as a father of two children with disability?" Hector responded to this question by testifying that "I would help and I try to help her in every way I could within my power with the hopes that maybe someday we could get back together for the benefit of the children."

Victoria's testimony, together with Hector's inability to understand his own dissolution, support the trial court's finding that Hector may have mental health problems. Accordingly, the trial court did not err by requiring Hector to obtain a psychological evaluation as a prerequisite to reestablishing contact with A.M.[4]

---

[4] Importantly, the trial court did not find that Hector *had* a mental health problem. Rather, it found that it suspected that he did and ordered an evaluation based on that concern.

IV

Hector further contends that the trial court erred by awarding spousal maintenance to Victoria for a period of 10 years.[5] This is so, he asserts, because the trial court failed to consider the parties' ages, the length of time of the order, or Victoria's ability to obtain a job. The record demonstrates otherwise.

We review a trial court's award of spousal maintenance for abuse of discretion. In re Marriage of Bulicek, 59 Wn. App. 630, 633, 800 P.2d 394 (1990). "The only limitation on amount and duration of maintenance under RCW 26.09.090 is that, in light of the relevant factors, the award must be just." Bulicek, 59 Wn. App. at 633 (citing In re Marriage of Morrow, 53 Wn. App. 579, 585, 770 P.2d 197 (1989)).

RCW 26.09.090 lists the factors that the trial court should consider when deciding whether to award spousal maintenance to one of the parties. These factors include, but are not limited to:

> (a) The financial resources of the party seeking maintenance, including separate or community property apportioned to him or her, and his or her ability to meet his or her needs independently, including the extent to which a provision for support of a child living with the party includes a sum for that party;
> (b) The time necessary to acquire sufficient education or training to enable the party seeking maintenance to find employment appropriate to his or her skill, interests, style of life, and other attendant circumstances;
> (c) The standard of living established during the marriage or domestic partnership;

---

[5] Hector's brief also assigns error to the trial court's division of community property. However, Hector does not make any argument with respect to this claim of error. We therefore treat this assignment of error as waived. Cowiche Canyon Conservancy v. Bosley, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

> (d) The duration of the marriage or domestic partnership;
> (e) The age, physical and emotional condition, and financial obligations of the spouse or domestic partner seeking maintenance; and
> (f) The ability of the spouse or domestic partner from whom maintenance is sought to meet his or her needs and financial obligations while meeting those of the spouse or domestic partner seeking maintenance.

RCW 26.09.090(1). However, "'[n]othing in RCW 26.09.060 requires the trial court to make specific factual findings on each of the factors listed in RCW 26.09.090(1). The statute merely requires the court to consider the listed factors.'" In re Marriage of Condie, 15 Wn. App. 2d 449, 470, 475 P.3d 993 (2020) (quoting In re Marriage of Mansour, 126 Wn. App. 1, 16, 106 P.3d 768 (2004)).

The record here establishes that the trial court considered all of the factors enumerated in RCW 26.09.090. In its findings of fact, the trial court found that the parties had little to no separate or community property available to be apportioned. Finding of Fact 13. Although the trial court did award child support to Victoria, the court recognized that the amount of child support might not be sufficient to meet the children's medical needs, which were significant. Finding of Fact 13. As the trial court noted, "[p]rior to COVID the mother was typically taking the children to seven different appointments every week." Finding of Fact 13. In addition to the cost of the children's medical treatment, the amount of appointments hindered Victoria's ability to work, and she had been a stay-at-home parent for a substantial amount of time. Finding of Fact 13. Victoria's lack of work experience rendered it necessary for her to obtain education or training, which she cannot obtain without paying for childcare. Finding of Fact 13.

Additionally, the trial court found that the parties had a long-term marriage that lasted for 26 years. Finding of Fact 13. The trial court found that Victoria was 51 years old at the time of trial and had recently started seeing a cardiologist for heart issues. Finding of Fact 13. The trial court also found that Hector had the ability to pay, given his gross earnings of approximately $99,000 per year. Findings of Fact 13, 22. These factual findings by the trial court, none of which Hector assigns error to,[6] demonstrate that it considered all of the factors enumerated in RCW 26.09.090.

Contrary to Hector's assertion, an award of spousal maintenance does not constitute an abuse of discretion solely due to the length of time the award is in effect. In re Marriage of Leaver, 20 Wn. App. 2d 228, 241, 499 P.3d 222 (2021). Rather, what is a reasonable length of time for a party to receive maintenance is wholly dependent on the facts of the case. In re Marriage of Spreen, 107 Wn. App. 341, 348, 28 P.3d 769 (2001).

Here, the trial court's award of spousal maintenance in the amount of $1,300 per month for 10 years was not an abuse of discretion in light of the evidence presented. As Victoria testified, her only source of income since March 2013 was the $1,400 per month that Hector was paying her. This was because a significant amount of her time was spent taking J.M. and A.M. to medical appointments, some of which lasted two hours every day. Victoria was also required to constantly supervise A.M. while school was remote, due to A.M.'s

---

[6] "Unchallenged findings of fact are verities on appeal." Rush v. Blackburn, 190 Wn. App. 945, 956, 361 P.3d 217 (2015).

"explosive, aggressive outbursts." She has had no assistance from family members, as they all live in either Texas or Mexico. All of these factors made caring for J.M. and A.M. the equivalent of a full-time job.

Because J.M. and A.M.'s medical needs are ongoing, Victoria's ability to obtain the education or training necessary to obtain a job that offers her the necessary flexibility is limited. Furthermore, although A.M. will have reached the age of majority before 2032, the need for Victoria to care for him is likely to last well into his adulthood.[7] The workable solution that the parties had come to on their own for the nine years prior to trial was for Hector to pay Victoria $1,400 per month. The amount of maintenance awarded by the trial court was $100 less than that. As Victoria's ability to obtain employment is hindered by the long-term medical needs of her sons, we cannot say that an award of maintenance for 10 years in the amount of $1,300 was unreasonable or unjust. The trial court did not abuse its discretion.

V

Victoria requests an award of attorney fees on two bases. Victoria first requests fees pursuant to RCW 7.105.310(1)(j). This statute permits the court to award costs, including attorney fees, "to reimburse the petitioner for costs incurred in bringing the action." RCW 7.105.310(1)(j). "The action" referenced in the statute is the cause of action seeking a domestic violence protection order. Although Hector initiated the dissolution action, it was Victoria who initiated the

---

[7] As the trial court found, J.M. was still dependent on Victoria at the age of 23. A.M.'s autism is more severe than J.M.'s and A.M. additionally suffers from juvenile arthritis.

11

action referred to in RCW 7.105.310.  Accordingly, we grant her request for an award of attorney fees, although our grant is limited to those fees incurred for work within the ambit of RCW 7.105.310 and where the legal work at issue took place after July 1, 2022, the effective date of the statute.  Upon proper application, a commissioner of our court will enter an appropriate order.

Second, Victoria requests an award of attorney fees pursuant to RAP 18.9(a) because, she asserts, Hector's appeal was frivolous.  "This court may award attorney fees to a party if the opposing party's appeal is frivolous."  Childs v. Allen, 125 Wn. App. 50, 58, 105 P.3d 411 (2004).  However, an appeal is only frivolous if it "presents no debatable issues and is so devoid of merit that there is no reasonable possibility of reversal."  Streater v. White, 26 Wn. App. 430, 434, 613 P.2d 187 (1980).

Although we affirm the decision of the trial court, we cannot say that Hector's appeal was so totally devoid of merit as to be frivolous.  Hector presented at least one debatable issue in challenging the length of the trial court's award of spousal maintenance.  Accordingly, we decline to award attorney fees to Victoria on this basis.

Affirmed.

_Dwyer, J._

WE CONCUR:

Feldman, J.          Díaz, J.